**George SERCL, Jr., and Maryanne Sercl, Appellees,**

v.

**UNITED STATES of America, Appellant.**

No. 82-1081.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1982.

Decided Aug. 9, 1982.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Stephen Gray, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Richard Moe, Atty., May, Johnson, Doyle & Becker, P. C., Sioux Falls, S. D., for appellees.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

BRIGHT, Circuit Judge.

The United States appeals from the district court's grant of summary judgment in favor of taxpayers George Sercl, Jr. (Sercl, Jr.), and his wife, Maryanne. The district court held that Sercl, Jr.'s, "split dollar" insurance agreement with his company did not constitute taxable income to him because the agreement fell within the "grandfather clause" in Rev.Rul. 64-328, 1964-2 Cum.Bull. 11. *See Sercl v. United States,* 538 F.Supp. 460 (D.S.D.1981). We reverse.

I. *Background.*

On November 4, 1964, Sunshine Food Markets, Inc. (Sunshine), and George Sercl, Sr. (Sercl, Sr.), then president and chief executive officer of Sunshine, entered into a split dollar insurance agreement. Under this agreement, Sunshine and Sercl, Sr., shared the premium payments for a $400,-000 insurance policy on the life of Sercl, Sr. Sunshine was responsible for the portion of each yearly premium equal to the annual

increase in the cash surrender value of the policy, and Sercl, Sr., paid the balance.[1]

The agreement provided that when the policy matured (either at the death of Sercl, Sr., or after the passage of thirty years, whichever occurred first), Sunshine would collect the full amount of the premiums it had paid, and the beneficiary designated by Sercl, Sr., would receive the remainder of the policy's proceeds. The agreement thus assured Sunshine of eventual repayment, and Sercl, Sr., received an economic benefit in the free use of his company's funds to help pay for his life insurance policy. Sunshine sustained a corresponding economic loss in the amount of the earnings it could have made on the money paid on the insurance premiums.

In conjunction with his retirement from active involvement with Sunshine, Sercl, Sr., assigned all his rights and obligations under the split dollar agreement to his son on February 1, 1971. Sercl, Sr., remained the measuring life on the policy, but Sercl, Jr., became liable for his father's share of the premiums and entitled to designate the policy's beneficiary. On April 16, 1971, Sercl, Jr., replaced his father as president and chief executive officer of Sunshine.

At the time Sercl, Sr., first set up his insurance agreement with Sunshine, the IRS did not consider the economic benefit conferred by a split dollar agreement as taxable income. See Rev.Rul. 55–713, 1955–2 Cum.Bull. 23. Between that time and the date Sercl, Jr., became a party to the agreement, however, the IRS reversed its position. See Rev.Rul. 64–328, supra. Although Rev.Rul, 64–328 contains a grandfather clause protecting those who acted in reliance on the prior ruling, the IRS determined that Sercl, Jr., was not covered by that clause. Accordingly, the IRS assessed a total of $12,329.55 in back taxes and interest against Sercl, Jr., and his wife for the taxable years of 1973–75 based on his participation in the split dollar agreement. After paying the assessed taxes, the Sercls brought suit in federal district court seeking a refund. The district court ruled in favor of the taxpayers in an order entered December 1, 1981. The United States now appeals, contending that Sercl, Jr.'s, split dollar agreement should not receive the same tax treatment as that of his father.

## II. Discussion.

When the IRS first considered split dollar insurance agreements, it decided to treat them as interest-free loans which do not result in taxable income to the employees. "The mere making available of money does not result in realized income to the payee * * *." Rev.Rul. 55–713, 1955–2 Cum.Bull. at 24.[2] The IRS later rejected the analogy between interest-free loans and split dollar insurance agreements, stating in Rev.Rul. 64–238, supra, that an employee with a split dollar agreement must include in income "the amount of the annual premium cost that he should bear and of which he is relieved." Id. at 13.[3] By its terms, Rev.

1. Two common methods exist for splitting the payments in split dollar agreements. Under the endorsement system, used by Sercl, Sr., and Sunshine, the employer owns the policy and pays the annual premiums to the insurance company. The employee then pays his share of the premiums to the employer. In the collateral assignment system, the employee owns the policy and pays the annual premiums. The employer makes annual interest-free loans to the employee in the amount of the increase in the policy's cash surrender value. In exchange, the employee assigns the policy to the employer as security for the loans. Despite the difference in form, the net effect of each method is the same.

2. In Greenspun v. Comm'r, 72 T.C. 931 (1979), the Tax Court pointed out that giving an employee an interest-free loan does not differ from charging the employee interest on the loan and increasing his salary by an offsetting amount. In the latter situation, the employee may deduct the interest payments, making the net effect on taxable income zero.

For a further discussion of the tax treatment of interest-free loans, see Dean v. Comm'r, 35 T.C. 1083 (1961); accord, Beaton v. Comm'r, 664 F.2d 315 (1st Cir. 1981); Martin v. Comm'r, 649 F.2d 1133 (5th Cir. 1981); Suttle v. Comm'r, 625 F.2d 1127 (4th Cir. 1980).

3. The IRS calculated this amount as "the 1-year term cost of the declining life insurance protection to which the employee is entitled from year to year, less the portion, if any, provided by the employee." Rev.Rul. 64–238, 1964–2 Cum.Bull. supra at 15.

Rul. 64–328 applies only "to policies purchased under 'split dollar' arrangements or utilized to establish such arrangements after November 13, 1964." *Id.* at 15.

The split dollar agreement between Sercl, Sr., and Sunshine was dated November 4, 1964, and the parties to this action agree that it fell within the above-quoted grandfather clause. We must decide, however, whether the assignment of the insurance policy from Sercl, Sr., to Sercl, Jr., created a new split dollar arrangement that falls outside the protection of the grandfather clause of Rev.Rul. 64–328.

The district court accepted the taxpayers' contention that Sercl, Jr.'s, split dollar agreement constituted a mere continuation of his father's agreement and thus part of the original arrangement covered by the grandfather clause. This analysis treats the arrangement as an agreement between Sunshine and its president/chief executive officer, so the change in identity of the company's president before the policy matured does not change the underlying agreement.

The Government argues that the assignment from father to son constituted a novation. In contract law, when one debtor substitutes for another with the consent of all the parties, a new contract is formed, although no alteration occurs in the terms of the agreement. Similarly here, the Government maintains that the substitution of Sercl, Jr., for Sercl, Sr., resulted in the creation of a new split dollar arrangement despite the continuation of the earlier arrangement's terms.

We find the Government's position more persuasive than the taxpayers'. Our conclusion rests on our analysis of the reason for including a grandfather clause in Rev. Rul. 64–328. Although the revenue ruling does not explicitly specify the purpose of the grandfather clause, the most logical explanation for it is to protect taxpayers who acted in reliance on the prior, revoked ruling. The Government's interpretation does exactly that, by providing protection for Sercl, Sr., who formulated his split dollar insurance agreement while Rev.Rul. 55–713

remained in effect. Sercl, Jr., however, who did not enter the agreement until years after the IRS had changed its position, does not receive such protection.

Sercl, Jr., contends that, when he stepped into his father's arrangement, he, too, relied on Rev.Rul. 55–713 to shield his split dollar arrangement in the same way as it had his father's. We do not agree. The grandfather clause was included in Rev.Rul. 64–328 to protect the individual who created the original arrangement, not to invest certain agreements with transferable tax immunity. The protected individual in the instant case is George Sercl, Sr., not his son.

We reverse the ruling of the district court, and remand this case for further proceedings and entry of judgment in conformity with this opinion.