KARL F. GOOS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goos v. Commissioner
Docket Nos. 12214-87, 12215-87
United States Tax Court
T.C. Memo 1991-146; 1991 Tax Ct. Memo LEXIS 165; 61 T.C.M. (CCH) 2300; T.C.M. (RIA) 91146; April 2, 1991, Filed *165 Decision will be entered for the respondent. Karl F. Goos, pro se. Russell Stewart, for the respondent. WELLS, Judge. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION In the instant consolidated cases (hereinafter referred to as the instant case), respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Addition to Tax Under Section [1]
Year
Deficiency 6653(a) 1977
$ 180,719.79
$ 9,035.99  1978
171,082.66
8,554.13
1979
95,702.93
4,785.15
1980
100,131.37
5,006.57
After concessions, the issues remaining for us to decide are (1) whether petitioner may exclude from his income amounts which he claims were nontaxable "split dollar" premiums paid by his wholly owned corporation with respect to life insurance covering petitioner's *166 life; and (2) whether petitioner is precluded from asserting the exclusion of such premiums from his income because of a "duty of consistency" or "quasi estoppel." FINDINGS OF FACT Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulations and accompanying exhibits are incorporated in this Opinion by reference. The stipulations settled all issues raised by respondent's notices of deficiency in the instant case. Petitioner resided in Orwigsburg, Pennsylvania, at the time he filed the petitions in the instant case. During the years in issue, petitioner was the president and principal executive officer of Frederick A. Potts & Co. (Potts & Co.), a corporation owned solely by petitioner. Potts & Co. was involved in the sale and export of coal and coal byproducts. In 1977, petitioner personally borrowed $ 5,000,000 from Citibank, N.A. (Citibank) and, in turn, lent the proceeds of the loan to Potts & Co. To secure the loan it received from petitioner, Potts & Co. gave petitioner a mortgage on certain real estate it owned. Petitioner assigned the mortgage to Citibank as additional collateral for the loan. During the years in issue, four whole life insurance *167 policies issued by National Home Life Assurance Company (the whole life policies) in the total approximate amount of $ 9,000,000 insuring petitioner's life were in force and owned by petitioner's spouse, Wilma Goos. As additional collateral for the Citibank loan, petitioner and his spouse assigned the whole life policies to Citibank. In his petitions, petitioner claimed that he erroneously reported as income, for the years in issue, life insurance policy premiums (hereinafter referred to as the premiums) paid by Potts & Co. in the following amounts: Year
Amount of Premiums
1977
$ 217,920.47  1978
213,112.37
1979
222,946.22
1980
62,853.80
The premiums represented payments for life insurance covering petitioner's life. Potts & Co. paid the premiums partially by cash and partially by policy loans against the cash surrender value of the whole life policies. Potts & Co. received correspondence from Nathan S. Kolbes Associates, Inc. (Kolbes), its insurance broker, advising Potts & Co. to include the premiums on petitioner's W-2 forms as income to petitioner. For the respective taxable years in issue, petitioner received W-2 forms from Potts & Co. which included *168 the premiums as "income or other taxable compensation" to petitioner. For the years in issue, Potts & Co. deducted the premiums on its corporate tax returns. OPINION As stated above, all of the issues arising out of respondent's notice of deficiency have been settled. In his petitions, however, petitioner claims that he erroneously included in his income the premiums paid by Potts & Co. with respect to life insurance on his life. Petitioner has the burden of proving that such amounts should be excluded from his income. Rule 142(a). Petitioner contends that the premiums were paid with respect to life insurance policies that were subject to a "split dollar" arrangement between Potts & Co. and petitioner's spouse, and therefore the payment of the premiums by Potts & Co. should be excluded from his income. "Split dollar" is a term generally used to describe various arrangements between employers and employees for sharing the cost of premiums for insurance covering the employee's life. Under a split dollar arrangement, the employer is entitled to receive out of the policy proceeds the "investment element," consisting of the greater of the cash surrender value or the amount of *169 premiums it has paid, and the employee's (or owner's) beneficiary is entitled to receive the balance, or "risk element." Johnson v. Commissioner, 74 T.C. 1316, 1322 (1980). In the instant case, respondent primarily contends that petitioner has failed to prove the existence of any split dollar arrangement. We agree. The evidence shows that Potts & Co. did not treat the payment of the premiums in issue as if they were connected with a split dollar arrangement. Petitioner received from Potts & Co. a form W-2 which included the premiums in his income as compensation. Potts & Co.'s corporate returns for the years in issue reflect a deduction for petitioner's compensation equal to the amounts shown on the W-2 forms. Kolbes advised Potts & Co. in writing each such year to include the premiums in petitioner's taxable income. Those letters made no reference to the existence of any split dollar arrangement. Petitioner, however, now contends that such treatment was in error. In order for a split dollar insurance arrangement to exist, the employer and employee must designate their respective rights to receive the policy proceeds. There are two normally accepted methods *170 of entering into such an arrangement. Under the so-called "endorsement" method, the employer is the owner, and the insurance company endorses the policy with the details of the "split" of the right to the death proceeds between the employer and the beneficiary. Under the so-called "collateral assignment" method, the owner of the policy (i.e., the insured or some other person or entity) assigns the policy to the employer as collateral for the "split" arrangement as to the death proceeds. See Sercl v. United States, 684 F.2d 597, 598 n.1 (8th Cir. 1982); Rev. Rul. 64-328, 1964-2 C.B. 11, 12. Under either method, on the death of the insured employee, the proceeds of the policy are split between the employer, to the extent of the investment element and the beneficiary, to the extent of the remainder. No documents evidencing an endorsement or collateral assignment of the life insurance policies for the years in issue, however, were offered at trial. Moreover, because petitioner does not claim that Potts & Co. owned the whole life policies, the existence of a split dollar arrangement cannot be established under the endorsement method. *171 Nevertheless, petitioner attempts to show that such arrangement existed under the collateral assignment method by means of a copy of a letter attached to petitioner's brief. The letter, dated February 20, 1980, from Kolbes to Potts & Co., was not offered as evidence at trial and is therefore not a part of the record. In any case, the letter refers to a "Split Dollar Agreement Collateral Assignment Form" that apparently was to be signed at a time subsequent to the years in issue and also refers to a "new U.S. Life policy." The letter does not refer to the whole life policies issued by National Home Life Assurance Company or any other policies in effect during the years in issue. Also attached to petitioner's brief is a copy of a pleading, apparently filed during 1981 in the Montgomery County, Pennsylvania Court of Common Pleas, which asserts the existence of a "Split Dollar Agreement, Collateral Assignment" that obligated Potts & Co. to make payments of premiums on certain policies. The pleading does not refer to any time period and was not offered at trial. Petitioner explains neither the letter nor the pleading in his brief, and respondent objects to their admission as evidence. *172 The record clearly establishes that the whole life policies were assigned to Citibank as collateral for a loan. Under that arrangement, Citibank would have had the right to receive all of the death proceeds. The form utilized to assign the life insurance to Citibank as collateral for the loan was signed by petitioner as insured and petitioner's spouse as owner and beneficiary. The form did not mention any collateral assignment and did not contain any assent by Potts & Co. to the assignment of the insurance to Citibank as collateral for the loan. Thus, under the documented arrangement during the years in issue, upon the death of petitioner, to the extent the death proceeds of insurance exceeded the outstanding balance of the Citibank loan, the bank would have had to pay such excess over to the record owner and beneficiary, petitioner's spouse. There is no documented arrangement during the years in issue under which Potts & Co. would have been entitled to any of the insurance proceeds. Petitioner offers the testimony of Murray Popkave, an employee of Kolbes during the years in issue, to prove the existence of the asserted split dollar arrangement. Mr. Popkave, however, admitted *173 that he knew little about "split dollar" life insurance arrangements during the years in issue. His assertion that a "split dollar" arrangement existed during the years in issue therefore must have been made pursuant to his current understanding of such arrangements, rather than his unaided recollections. The letters sent to Potts & Co. by Kolbes during the years in issue advising Potts & Co. to include the premiums in petitioner's W-2 forms as income were signed by Mr. Popkave and make no reference to any split dollar arrangement. Furthermore, in his testimony, Mr. Popkave gave neither the details of the asserted split dollar arrangement nor the specific years in which such an arrangement existed. It appears, from the bits of the confused record that we can piece together, that the scenario posited by respondent is the more likely one, namely, that a split dollar arrangement might have been entered into after the years in issue with respect to a policy with U.S. Life, but that during the years in issue the only assignment of life insurance that existed was the assignment to Citibank of the whole life policies issued by National Home Life Assurance Company. Considering the lack *174 of evidence in the instant case and considering petitioner's burden of proof, we are unable to conclude that a split dollar arrangement existed during the years in issue with respect to any life insurance covering petitioner's life. We therefore hold that petitioner has failed to prove that the premium payments paid by Potts & Co. with respect to insurance covering petitioner's life were improperly included in petitioner's income during the years in issue. Our holding dispenses with the need to address the issue of whether petitioner should be precluded by the doctrines of "duty of consistency" or "quasi estoppel" from asserting that the premiums were not income to petitioner. We nevertheless note that such defenses are affirmative defenses which must be, but were not, affirmatively pleaded. Arkansas Best Corp. v. Commissioner, 83 T.C. 640, 660 n.8 (1984), affd. in part and revd. in part on other issues 800 F.2d 215 (8th Cir. 1986), affd. 485 U.S. 212 (1988); Rule 39. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩