E. NORMAN PETERSON MARITAL TRUST, CHEMICAL BANK, TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26044–91.     Filed June 28, 1994.

*Richard B. Covey* and *Michael I. Frankel*, for petitioner.
*Michael A. Menillo*, for respondent.

OPINION

HAMBLEN, *Chief Judge:* Respondent determined a deficiency in petitioner's Federal generation-skipping transfer (GST) tax in the amount of $810,925. Unless otherwise indicated, section references are to the Internal Revenue Code in effect as of the date of the transfers at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by petitioner,[1] the issues for decision are:

(1) Whether the transfers of assets from the E. Norman Peterson Marital Trust (marital trust) upon the death of Eleanor C. Peterson (Mrs. Peterson) are excepted from the Federal GST tax by reason of the effective date rules of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99–514, section 1433(b)(2)(A), 100 Stat. 2731. We hold that they are not;

(2) whether the exclusion provided by TRA 1986 section 1433(b)(3), 100 Stat. 2731, relating to certain transfers to grandchildren, applies to such transfers. We hold that it does not;

(3) whether the imposition of the GST tax on the transfers at issue violates the Due Process Clause or equal protection principles of the Fifth Amendment to the Constitution. We hold that it does not; and

(4) whether, in calculating the GST tax deficiency, the amount of interest due with respect to the GST tax deficiency

---

[1] Petitioner conceded certain adjustments to the value of the property subject to the GST tax.

is excluded from the GST tax base. We hold that it is excluded.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation and attached exhibits are incorporated by this reference. At the time the petition was filed, the principal place of business of the trustee of petitioner was New York, New York.

Petitioner is a testamentary trust created pursuant to the will of E. Norman Peterson (Mr. Peterson). Mr. Peterson died on October 20, 1974. According to the terms of Mr. Peterson's will, Mrs. Peterson was to receive all the income of the marital trust during her lifetime, and she had the right to withdraw one-half of the principal of the trust during her lifetime. She did not exercise that right of withdrawal. In addition, Mr. Peterson's will gave Mrs. Peterson a testamentary general power of appointment over the corpus of the marital trust, as follows:

I direct my Trustees to pay over and distribute the principal of * * * [the marital trust], as then constituted, to such person or persons (including her own estate), in such amounts and upon such estates as my wife by specific provision in her Last Will and Testament shall have appointed * * *.

The terms of Mr. Peterson's will provided that, to the extent Mrs. Peterson did not exercise her testamentary general power of appointment, the principal of the marital trust was to be set aside in equal shares for the grandchildren of Mr. Peterson. These grandchildren were the grandchildren of Mr. Peterson by a prior marriage and were not the grandchildren of Mrs. Peterson.

Any share set aside for a grandchild of Mr. Peterson who had attained age 30 was to be paid to that grandchild. Any share for a grandchild under age 30 was to be retained in trust (individually a grandchild's trust, collectively the grandchildren's trusts) for the benefit of that grandchild, with the principal to be distributed upon the grandchild's attaining age 30. If the grandchild for whom a share had been set aside died before reaching age 30, the assets of his or her grandchild's trust were to be distributed to his or her

surviving issue or, if none, to Mr. Peterson's other grand-children in equal shares.

Mrs. Peterson, a resident of Florida, died on September 5, 1987. Because of her general power of appointment over the marital trust property, the entire value of the trust property was included in her gross estate for Federal estate tax purposes in accordance with section 2041. Pursuant to her will, Mrs. Peterson exercised her general power of appointment only to the extent of directing that the Federal estate tax attributable to the inclusion of the marital trust property in her gross estate be paid from the marital trust property. Her will explicitly provided that she did not otherwise exercise her power of appointment. Accordingly, the balance of the marital trust property passed (pursuant to the terms of Mr. Peterson's will) to the grandchildren's trusts for the benefit of Mr. Peterson's nine grandchildren, all of whom were under age 30.

On or about August 10, 1988, the personal representatives of Mrs. Peterson's estate filed a Federal Estate Tax Return (Form 706), which included an attached Schedule R–1 GST tax payment voucher. The Schedule R–1 stated that the transfers to the grandchildren's trusts were subject to the GST tax, and that there was a GST tax due in the amount of $827,404.

On October 17, 1988, respondent received a "Statement of Trustees" from the trustee of the marital trust stating that the GST tax liability should be reduced to $18,910. This significant reduction was based primarily on the trustee's contention that Mr. Peterson, rather than Mrs. Peterson, should be treated as the "transferor" of the property, thereby causing the transfers to qualify for the TRA 1986 section 1433(b)(3) GST tax exception, relating to certain transfers to grandchildren, to the extent the interest of each grandchild could be actuarially valued. On August 12, 1991, respondent issued the statutory notice of deficiency, which disallowed the use of the TRA 1986 section 1433(b)(3) exception, and made certain other adjustments to the GST tax calculation.

*Discussion*

Section 2601 imposes the GST tax on every generation-skipping transfer. Section 2611(a) defines the term "generation-

skipping transfer" to mean any of three types of transfers: A taxable termination, a taxable distribution, or a direct skip. Respondent contends that the transfers of property from the marital trust to the grandchildren's trusts upon Mrs. Peterson's death constitute "direct skips" and are therefore generation-skipping transfers subject to the GST tax.

In general, a transfer of an interest in property constitutes a "direct skip" if: (1) The transfer is subject to either the Federal gift tax or the Federal estate tax and (2) the transfer is to a "skip person". Sec. 2612(c)(1). Because Mrs. Peterson's general power of appointment over the marital trust property caused the property to be included in her gross estate under section 2041, the first prong of the test is met.

With respect to the second prong of the direct skip test, the term "skip person" includes "a natural person assigned to a generation which is 2 or more generations below the generation assignment of the transferor." Sec. 2613(a)(1). Because Mr. Peterson's grandchildren are two generations below Mrs. Peterson, [2] sec. 2651(b)(2), each grandchild is a skip person. Moreover, each grandchild's trust constitutes a skip person, since all the interests in each such trust are held by a skip person (i.e., the grandchild for whose benefit the trust was established). Sec. 2613(a)(2). As a result, the transfers of the marital trust property to the grandchildren's trusts upon Mrs. Peterson's death constitute direct skips.[3]

---

[2] As discussed *infra*, in the context of the GST tax exception for transfers to grandchildren, petitioner contends that Mr. Peterson, rather than Mrs. Peterson, is the "transferor". Although we disagree with petitioner's contention for the reasons set forth *infra*, we note that petitioner's distinction between Mr. Peterson and Mrs. Peterson as transferor is irrelevant for purposes of determining whether Mr. Peterson's grandchildren are skip persons. Even if Mr. Peterson was the transferor, his grandchildren would constitute skip persons. Sec. 2651(b)(1).

[3] The transfers also meet the statutory definition of a "taxable termination". Sec. 2612(a). The relevant part of sec. 2612(a) provides:

SEC. 2612(a). TAXABLE TERMINATION.—

(1) GENERAL RULE.—For purposes of this chapter, the term "taxable termination" means the termination (by death, lapse of time, release of power, or otherwise) of an interest in property held in trust unless—

(A) immediately after such termination, a non-skip person has an interest in such property, or

(B) at no time after such termination may a distribution (including distributions on termination) be made from such trust to a skip person.

Upon Mrs. Peterson's death, her interest in the marital trust terminated, thereby invoking the general rule of sec. 2612(a)(1). Because all of the interests in the grandchildren's trusts are held by skip persons (Mr. Peterson's grandchildren), the exceptions contained in sec. 2612(a)(1)(A) and (B) do not apply.

Sec. 26.2612–1(b)(1)(i), Proposed GST Tax Regs., 57 Fed. Reg. 61361 (Dec. 24, 1992), adds an additional requirement to the statutory definition of "taxable termination" so that a transfer that qualifies as both a taxable termination and a direct skip will be treated as a direct skip.

Petitioner does not challenge the statutory analysis set forth above. Rather, petitioner presents three alternative arguments for its contention that, notwithstanding the fact that the transfers at issue are direct skips, the transfers are not subject in full to the GST tax, as follows: (1) The effective date rules of TRA 1986 section 1433(b) prevent the application of the GST tax to the transfers; (2) the exception provided by TRA 1986 section 1433(b)(3), relating to certain transfers to grandchildren, applies to the transfers; and (3) the application of the GST tax to the transfers violates the Due Process Clause and equal protection principles of the Fifth Amendment to the Constitution. For the reasons set forth below, we disagree with each of these contentions.

Petitioner also argues that, in the event we hold that the transfers are subject to the GST tax, the amount of interest due on the GST tax deficiency must be excluded from the value of the GST tax base for purposes of calculating the GST tax. For the reasons set forth below, we agree with petitioner on this issue.

Issue 1. *Applicability of the GST Tax Effective Date Rules*

a. *In General*

The generation-skipping transfer tax provisions were enacted as part of TRA 1986.[4] With certain exceptions, the GST tax applies to all generation-skipping transfers made after October 22, 1986, the date of enactment of TRA 1986. TRA 1986 sec. 1433(a), 100 Stat. 2731.[5] Were this general rule applicable, the GST tax would apply to the transfers at

---

Petitioner does not challenge this proposed regulation. Moreover, both parties have focused on the direct skip rules, rather than the taxable termination rules. Accordingly, we analyze the transfers in the context of the direct skip rules.

[4] The Tax Reform Act of 1986 (TRA 1986), Pub. L. 99–514, 100 Stat. 2085, substantially modified, and retroactively repealed, a prior tax on generation-skipping transfers that had been enacted in 1976. H. Rept. 99–426 (1985), 1986–3 C.B. (Vol. 2) 1, 824, 828.

[5] TRA 1986 sec. 1433 provides:

SEC. 1433. EFFECTIVE DATES.

(a) General Rule.—Except as provided in subsection (b), the amendments made by this part shall apply to any generation-skipping transfer (within the meaning of section 2611 of the Internal Revenue Code of 1986) made after the date of the enactment of this Act.

(b) Special Rules.—

    *       *       *       *       *       *       *

(2) Exceptions.—The amendments made by this part shall not apply to—

(A) any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985 (or out of income attributable to corpus so added) * * *.

issue, since the transfers from the marital trust to the grand-children's trusts occurred on September 5, 1987, the date of Mrs. Peterson's death.

Petitioner argues that an exception to the general effective date rule, contained in TRA 1986 section 1433(b)(2)(A), precludes the applicability of the GST tax to the transfers at issue. That exception provides that the GST tax does not apply to "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985". TRA 1986 sec. 1433(b)(2)(A). Because the marital trust was irrevocable on September 25, 1985, petitioner contends, the subsequent transfers from that trust upon Mrs. Peterson's death are exempt from the GST tax.

Respondent concedes that the marital trust was irrevocable on September 25, 1985. Accordingly, the effective date exception of TRA 1986 section 1433(b)(2)(A) applies to the transfers at issue unless the transfers were made out of property added to the marital trust after September 25, 1985. Respondent contends that Mrs. Peterson, by failing to exercise her testamentary general power of appointment over the marital trust property that was transferred to the grand-children's trust, constructively added that property to the marital trust on September 5, 1987, the date of her death. As a result, respondent argues, the transfers do not qualify for the effective date exception.

b. *Validity of Temporary Regulations*

In support of her "constructive addition" theory, respondent cites section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., 53 Fed. Reg. 8445 (Mar. 15, 1988), corrected by 53 Fed. Reg. 18839 (May 25, 1988), which provides in relevant part:

(v) *Constructive additions*—(A) *In General.* Except as provided below, where any portion of a trust remains in the trust after the release, exercise, or lapse of a power of appointment over that portion of the trust, and the release, exercise or lapse is treated to any extent as a taxable transfer under Chapter 11 or Chapter 12, the value of the entire portion of the trust subject to the power that was released, exercised, or lapsed will be treated as an addition to the trust. The creator of the power will be considered the transferor of the addition except to the extent that the release,

exercise, or lapse of the power is treated as a taxable transfer under Chapter 11 or Chapter 12. In the latter case, the transferor for purposes of Chapter 11 or Chapter 12 is the transferor for purposes of Chapter 13.

Respondent also cites Example (1) of section 26.2601–1(b)(1)(v)(D), Temporary GST Tax Regs., 53 Fed. Reg. 8445 (Mar. 15, 1988). That example applies the above-quoted temporary regulation to facts analogous to those in the present case, concluding that the lapse of a decedent's testamentary general power of appointment over trust property upon her death constitutes a deemed distribution of the property to the decedent, followed by a constructive transfer of the property back to the trust. Cf. *United States v. O'Malley*, 383 U.S. 627, 632–633 (1966); *Estate of Kinney v. Commissioner*, 39 T.C. 728, 731 (1963) (failure to take property out of trust treated as the equivalent of a transfer to the trust for purposes of the Federal estate tax retained interest provisions).

Under these temporary regulations, the marital trust property over which Mrs. Peterson did not exercise her general power of appointment is deemed to have been added to the marital trust by Mrs. Peterson on the date of her death, September 5, 1987. Because this constructive addition occurred after September 25, 1985, the transfers of the property to the grandchildren's trusts do not qualify for the effective date exception.

Petitioner asserts that section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, is invalid and should not affect our interpretation of the effective date statute. We disagree.

We have previously held that temporary regulations are entitled to the same weight as final regulations.[6] *Truck & Equip. Corp. v. Commissioner*, 98 T.C. 141, 149 (1992); *Nissho Iwai American Corp. v. Commissioner*, 89 T.C. 765, 776 (1987). In determining the validity of a regulation, a legislative regulation, which flows from a specific congressional grant of authority, is entitled to greater deference than an interpretative regulation, which is promulgated under the general rulemaking power in section 7805(a). *E.I.*

---

[6] Petitioner cites *Estate of Howard v. Commissioner*, 91 T.C. 329, 337 (1988), revd. 910 F.2d 633 (9th Cir. 1990), for the proposition that temporary regulations are not entitled to judicial deference, and that they carry no more weight than a position advanced on brief. Petitioner's argument, however, fails to differentiate between proposed regulations, which were at issue in *Estate of Howard*, and temporary regulations, which are at issue in the present case. See *Zinniel v. Commissioner*, 89 T.C. 357, 369 (1987), affd. 883 F.2d 1350 (7th Cir. 1989) (differentiating between proposed and temporary regulations).

*Du Pont De Nemours & Co. v. Commissioner*, 102 T.C. 1 (1994); see also *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982). Legislative regulations "can only be set aside by a court if they are arbitrary, capricious, or clearly contrary to the statute." *McKnight v. Commissioner*, 99 T.C. 180, 183 (1992), affd. 7 F.3d 447 (5th Cir. 1993). In contrast, an interpretative regulation may be set aside "if it is not a reasonable interpretation of the Code." *Id.*

Section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, is an interpretative regulation. TRA 1986 section 1433(b)(2)(A), which contains the effective date provision to which the challenged temporary regulation relates, contains no specific delegation of authority for the promulgation of regulations. Although section 2663, which was added by TRA 1986 section 1431(a), 100 Stat. 2717, 2729, contains express legislative regulation authority, this authority is limited to carrying out the purposes of chapter 13 of the Code. Sec. 2663. Because the effective date rules of TRA 1986 section 1433(b)(2)(A) are separate transitional provisions that are not incorporated into chapter 13 of the Code, the delegation authority of section 2663 is not applicable. See *Western Natl. Mut. Ins. Co. v. Commissioner*, 102 T.C. 338, 357 (1994). Accordingly, the authority for the challenged temporary regulation derives from the interpretative authority of section 7805(a).[7] See *id.*

Because section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, was promulgated as an interpretative regulation under section 7805(a), we must decide whether it is a reasonable interpretation of TRA 1986 section 1433(b)(2)(A). In determining whether the temporary regulation implements the congressional mandate in some reasonable manner, "we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." *McKnight v. Commissioner, supra* at 183.

"While we acknowledge the normal importance of the statutory language," *E.I. Du Pont De Nemours & Co. v. Commissioner, supra* at 9, TRA 1986 section 1433(b)(2)(A), standing alone, does not provide specific guidance as to

---

[7] Of course, even if the challenged temporary regulation was a legislative regulation, the application of the more lenient standard of review for legislative regulations would not change the result in this case. See *Western Natl. Mut. Ins. Co. v. Commissioner*, 102 T.C. 338, 357 n.21 (1994).

whether a lapse of a general power of appointment constitutes a constructive addition to the corpus of a trust for purposes of the effective date rules. The relevant portion of the statute provides that transfers "made out of corpus added to the trust after September 25, 1985", are not excepted from the GST tax under the effective date rules. TRA 1986 sec. 1433(b)(2)(A). The statute does not define the term "added to the trust". Moreover, the statute neither explicitly includes nor excludes constructive additions. Accordingly, we disagree with petitioner's contention on brief that the constructive addition provision of the temporary regulation is inconsistent with the "plain meaning" of the statutory language.

Because the language of the statute does not provide specific guidance, we look to the legislative history for indications of the origin and purpose of the statute. *E.I. Du Pont De Nemours & Co. v. Commissioner, supra* at 10. Petitioner has cited no portion of the legislative reports in support of its contention that the temporary regulation is inconsistent with the legislative history. Indeed, the only reference to the effective date rules in the committee reports merely paraphrases the statute: "Transfers from trusts that were irrevocable before September 25, 1985, are exempt to the extent that the transfers are not attributable to additions to the trust corpus occurring after that date". H. Rept. 99–426 (1985), 1986–3 C.B. (Vol. 2) 1, 828.

In the absence of specific guidance in the legislative history, we can only speculate as to the purpose of the effective date rule in question. See *Graves v. Commissioner*, 88 T.C. 28, 32, supplemented by 89 T.C. 49 (1987). The effective date rules of TRA 1986 section 1433(b)(2)(A) were apparently intended to "grandfather" trusts that were irrevocable prior to the date the House Ways and Means Committee began consideration of the bill containing the GST tax provisions.[8] The most logical explanation for this grandfather clause is to protect the reliance interests of trust settlors who established irrevocable trusts prior to the legislative introduction of the GST tax regime eventually enacted by TRA 1986. See

---

[8] The staff of the Joint Committee on Taxation presented its tax reform options, including the GST tax provisions, to the House Ways and Means Committee on Sept. 26, 1985, whereas the grandfather clause applies to trusts that were irrevocable on Sept. 25, 1985. See Joint Comm. on Taxation, Summary of Tax Reform Option for Consideration by Comm. on Ways and Means (JCS–43–85) (Sept. 26, 1985).

*Tataranowicz v. Sullivan*, 959 F.2d 268, 277 (D.C. Cir. 1992); *Sercl v. United States*, 684 F.2d 597, 599 (8th Cir. 1982).

As a corollary to its protection of reliance interests, the grandfather clause does not apply to transfers "made out of corpus added to the [grandfathered] trust after September 25, 1985". TRA 1986 sec. 1433(b)(2)(A). Unlike a person who has irrevocably transferred money to a trust prior to the grandfathering date, a person who effects a transfer of corpus to a grandfathered trust after that date is aware of (or should be aware of) the effects of the GST tax. Absent a restriction on post-grandfather-date transfers, an individual could utilize an existing grandfathered trust as a vehicle for passing additional amounts to skip persons free of GST tax, even though these additional amounts had not been irrevocably committed to such a transfer as of September 25, 1985. Such a result would be contrary to the reliance purpose underlying the grandfather clause. See *Sercl v. United States, supra* at 599 (grandfather clause providing tax benefits to split dollar insurance agreements purchased prior to a specified date was intended "to protect the individual who created the original arrangement, not to invest certain agreements with transferable tax immunity").

Section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, is consistent with the reliance purpose underlying TRA 1986 section 1433(b)(2)(A), and is therefore valid. A person who holds a general power of appointment over trust property maintains control over the ultimate disposition of that property and is, in practical effect, in a position similar to the actual owner of the property. *Estate of Kurz v. Commissioner*, 101 T.C. 44, 50–51, 59–60 (1993), supplemented by T.C. Memo. 1994–221. This is the rationale underlying the inclusion of such property in the gross estate of the holder of the power for purposes of the Federal estate tax. *Id.*

Mrs. Peterson, as the holder of a testamentary general power of appointment, maintained effective control over the disposition of the property in the marital trust until her death in 1987. Had she chosen to do so, Mrs. Peterson could have exercised the general power of appointment to cause the trust property to be distributed to persons other than the grandchildren's trusts, thereby avoiding a generation-skipping transfer. Accordingly, as of the September 25, 1985,

grandfather date, the corpus of the trust was not irrevocably required to be distributed to the grandchildren's trusts.

Mrs. Peterson, by failing to exercise her testamentary general power of appointment in full upon her death in 1987, allowed the marital trust property to pass to the grandchildren's trusts. Because this event occurred after the September 25, 1985, grandfather date, the reliance purpose underlying the TRA 1986 section 1433(b)(2)(A) grandfather clause is inapplicable to the present situation. Accordingly, we hold that section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, which treats the transfers under the present circumstances as post-grandfather-date constructive additions to the marital trust, constitutes a reasonable and valid interpretation of TRA 1986 section 1433(b)(2)(A).

### c. *"Understanding" Between Mr. Peterson and Mrs. Peterson*

Petitioner further argues that, even if section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, is valid, that temporary regulation does not apply to the specific facts of this case. Petitioner contends that an "understanding" existed between Mr. Peterson and Mrs. Peterson that Mrs. Peterson would not exercise her purported general power of appointment, and that the marital trust assets would therefore pass to Mr. Peterson's grandchildren. According to petitioner, this understanding constituted a binding agreement and, had Mrs. Peterson attempted to exercise her purported power in contravention of this understanding, Mr. Peterson's descendants could have sued in State court to impose a constructive trust on the property to protect their interests. As a result, petitioner contends, Mrs. Peterson did not hold a valid general power of appointment over the trust property, and section 26.2601–1(b)(1)(v)(A), Temporary GST Tax Regs., *supra*, is inapplicable.

We reject petitioner's argument. Petitioner has presented no credible evidence that a legally enforceable agreement existed between Mr. and Mrs. Peterson requiring Mrs. Peterson to refrain from exercising the general power of appointment. The sole evidence petitioner presented on this matter is a letter dated November 15, 1991, addressed to petitioner's counsel in the present case, from Frederick A. Terry, Jr., the

attorney who counseled Mr. and Mrs. Peterson regarding their estate plans and who prepared Mr. Peterson's will in the early 1970s. The letter contains Mr. Terry's recollections of Mr. and Mrs. Peterson's purported expectations regarding the estate plan. Given that the letter was prepared in anticipation of this litigation, and that the estate planning events discussed in the letter had occurred approximately 20 years earlier, the letter is entitled to little evidentiary weight.

Even were we to give evidentiary weight to Mr. Terry's letter, it does not support petitioner's claim that a legally binding agreement existed between Mr. and Mrs. Peterson with respect to Mrs. Peterson's nonexercise of the general power of appointment. According to Mr. Terry's letter, Mr. Peterson gave Mrs. Peterson the general power of appointment in order to qualify the marital trust for the Federal estate tax marital deduction. The letter further states that it was Mr. Peterson's "expectation" that Mrs. Peterson would not exercise her power except with respect to the payment of estate taxes attributable to the inclusion of the trust assets in her gross estate at her death, and that it was Mr. Peterson's "expectation" that Mrs. Peterson would not utilize her lifetime power to invade one-half of the trust principal to benefit her own descendants.

We have no reason to doubt Mr. Terry's claim that the general power of appointment was included in Mr. Peterson's estate plan documents in order to obtain the benefits of the Federal estate tax marital deduction. Moreover, it is plausible that Mr. Peterson had an "expectation" that Mrs. Peterson would not exercise the general power of appointment to benefit her own descendants. However, a mere "expectation" does not constitute a legally enforceable agreement that Mrs. Peterson would not exercise the power, especially given the unambiguous language of Mr. Peterson's will. The will, which was prepared by Mr. Terry as Mr. Peterson's estate planning counsel, provides that, upon Mrs. Peterson's death,

I direct my Trustees to pay over and distribute the principal of * * * [the marital trust], as then constituted, to such person or persons (*including her own estate*), in such amounts and upon such estates as my wife by specific provision in her Last Will and Testament shall have appointed, or in default of such appointment or to the extent not so appointed, [to my grandchildren] in equal shares * * *. [Emphasis added.]

As Mr. Peterson and his estate planning counsel intended, the authority granted to Mrs. Peterson in this provision meets the statutory requirements for a general power of appointment. See sec. 2041(b)(1).[9]

Moreover, Mr. Terry, in his letter, admits that the general power of appointment was valid. Despite Mr. Peterson's alleged "expectations" that Mrs. Peterson would not exercise the power, Mr. Terry concedes that Mr. Peterson was aware that Mrs. Peterson "could exercise her power as she chose by her Will." This recollection flatly contradicts petitioner's assertion regarding a legally binding agreement that Mrs. Peterson would not exercise her general power of appointment.[10]

Petitioner cites numerous State court cases in support of its constructive trust argument. See *Redke v. Silvertrust*, 490 P.2d 805 (Cal. 1971); *In re Rath's Estate*, 75 P.2d 509 (Cal. 1938); *Kramer v. Freedman*, 272 So. 2d 195 (Fla. Dist. Ct. App. 1973); *Shattuck v. Estate of Tyson*, 508 So. 2d 1077 (Miss. 1987). None of these cases is applicable to the facts of the present case.

For example, *Redke v. Silvertrust, supra*, involved a husband's promise to his terminally ill wife that, upon his death, he would exercise a general power of appointment given to him pursuant to his wife's previously executed will in favor of his wife's daughter by a prior marriage. The husband later affirmed his promise in the presence of five witnesses. In reliance upon this promise, the wife refrained from revising her will to leave the property outright to her daughter. When the husband, upon his death, failed to appoint the property to his deceased wife's daughter, the court held that his promise to his wife was binding and that he held the property in a constructive trust. See also *In re Rath's Estate, supra* (constructive trust upheld because decedent relied on *written* promise of will beneficiary to dispose of property in specified manner); *Kramer v. Freedman, supra* (constructive trust upheld because decedent relied on *written* promise of will

---

[9] Sec. 2041(b), with certain exceptions not here relevant, provides: "The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate". The power granted to Mrs. Peterson explicitly included the power to appoint the assets to her own estate.

[10] We also note that Mrs. Peterson's personal representatives apparently did not challenge the validity of the general power of appointment as it related to the inclusion of the marital trust property in her gross estate under sec. 2041.

beneficiaries to dispose of property in specified manner); *Shattuck v. Estate of Tyson, supra* (similar facts and holding as *Redke*).

Unlike the above-cited cases, this case contains no evidence that Mrs. Peterson made a binding promise, either oral or written, to refrain from exercising her general power of appointment. As discussed above, at most there was an expectation that she would not exercise the power. Moreover, unlike the terminally ill wife in *Redke*, who relied to her detriment on her husband's promise by not revising her will, there is no evidence that Mr. Peterson refrained from revising his will as a result of an alleged promise by Mrs. Peterson. To the contrary, the general power of appointment was specifically included in Mr. Peterson's will, enabling his estate to obtain the benefits of the estate tax marital deduction in accordance with the advice of estate planning counsel and, according to Mr. Terry's letter, Mr. Peterson was aware that Mrs. Peterson could exercise her power in any manner she chose.

Issue 2. *Applicability of the Exemption for Transfers to Grandchildren*

Petitioner also contends that TRA 1986 section 1433(b)(3), sometimes referred to as the "grandchild exclusion", applies to the transfers at issue. That section provides:

> (3) Treatment of certain transfers to grandchildren.—For purposes of * * * [the GST tax], the term "direct skip" shall not include any transfer before January 1, 1990, from a transferor to a grandchild of the transferor to the extent that the aggregate transfers from such transferor to such grandchild do not exceed $2,000,000.

The transfers from the marital trust to the grandchildren's trusts occurred upon Mrs. Peterson's death in 1987, and therefore meet the timing requirement of TRA 1986 section 1433(b)(3).[11] As a result, the transfers qualify for the grand-

---

[11] The legislative history of TRA 1986 states that a transfer to a grandchild under TRA 1986 sec. 1433(b)(3) may be made either outright or in trust. H. Rept. 99–426 (1985), 1986–3 C.B. (Vol. 2) 1, 826. Sec. 1014(h)(3) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100–647, 102 Stat. 3559, 3567–3568, amended TRA 1986 sec. 1433(b)(3) retroactive to the effective date of TRA 1986. TAMRA sec. 1019, 102 Stat. 3593. The TAMRA amendments contain detailed requirements that must be met in order for transfers in trust to qualify for the grandchild exclusion. One such requirement is that "the assets of the trust will be includible in the gross estate of the grandchild if the grandchild dies before the trust is terminated". TRA 1986 sec. 1433(b)(3)(B)(ii) (as amended by TAMRA). Respondent argues that the transfers

child exclusion if they constitute transfers to a "grandchild of the transferor" within the meaning of the statute.

The grandchildren's trusts were established for the benefit of Mr. Peterson's grandchildren by a prior marriage. These grandchildren were not the grandchildren of Mrs. Peterson. Accordingly, if Mr. Peterson is considered the "transferor", the transfers were to a grandchild of the transferor, whereas if Mrs. Peterson is considered the "transferor", the transfers were not to a grandchild of the transferor.

Section 2652(a)(1)(A) provides that, "in the case of any property subject to the [Federal estate tax]," the term "transferor" means the decedent.[12] Because of Mrs. Peterson's general power of appointment over the marital trust assets, the assets that were transferred to the grandchildren's trusts from the marital trust were included in Mrs. Peterson's gross estate for purposes of the Federal estate tax. As the decedent in whose gross estate the transferred property was included, Mrs. Peterson constitutes the "transferor" under section 2652(a)(1)(A). Because the beneficiaries of the grandchildren's trusts are not Mrs. Peterson's grandchildren, the transfers at issue were not to a grandchild of the transferor, and therefore do not meet the requirements of the grandchild exclusion.

Petitioner concedes that this "literal reading" of section 2652(a)(1) causes Mrs. Peterson to be treated as the transferor. Nonetheless, petitioner contends that Mr. Peterson should be treated as the transferor. Petitioner bases its argument on the purported "understanding" between Mr. Peterson and Mrs. Peterson that Mrs. Peterson would not exercise

to the grandchildren's trusts do not meet this requirement. Petitioner, while conceding that the grandchildren's trusts do not meet this requirement, contends that applying this TAMRA requirement retroactively to the 1987 transfers constitutes a violation of the Due Process Clause of the Fifth Amendment. Because we hold that the transfers are not eligible for the grandchild's exclusion on other grounds, we need not decide this issue.

[12] The relevant part of sec. 2652(a)(1) provides:

SEC. 2652. OTHER DEFINITIONS.

(a) TRANSFEROR.—For purposes of this chapter—

(1) IN GENERAL.—Except as provided in this subsection or section 2653(a), the term "transferor" means—

(A) in the case of any property subject to the tax imposed by chapter 11, the decedent, and

(B) in the case of any property subject to the tax imposed by chapter 12, the donor.

An individual shall be treated as transferring any property with respect to which such individual is the transferor.

her general power of appointment (other than with respect to the payment of certain Federal estate taxes).

For the reasons discussed in the preceding section, we reject petitioner's contention that any such understanding constituted a legally binding agreement. At most, Mr. Peterson had an expectation that Mrs. Peterson would not exercise the general power of appointment, thereby allowing the assets of the marital trust to pass to the grandchildren's trusts for the benefit of Mr. Peterson's grandchildren. Although Mrs. Peterson did, in fact, refrain from exercising her general power of appointment (except to pay certain Federal estate taxes attributable to the inclusion of the trust property in her gross estate), the power was valid and could have been exercised with respect to all of the marital trust property. As a result, the marital trust property was included in Mrs. Peterson's gross estate.

Under these circumstances, Mrs. Peterson is the "transferor" under the plain language of section 2652(a)(1)(A). Because the transfers at issue were not to her grandchildren, we hold that the transfers do not meet the requirements for the grandchild exclusion of TRA 1986 section 1433(b)(3).

Issue 3. *Applicability of the Due Process Clause and Equal Protection Principles*

Petitioner's final argument against the applicability of the GST tax is based on constitutional grounds. According to petitioner, the imposition of the GST tax under the present circumstances violates both the Due Process Clause and the equal protection principles of the Fifth Amendment to the Constitution. For the reasons set forth below, we disagree.

a. *Due Process Clause*

Petitioner contends that the imposition of the GST tax on the transfers at issue constitutes a retroactive application of the GST tax statute in violation of the Due Process Clause of the Fifth Amendment. Petitioner correctly points out that, at the time of Mr. Peterson's death in 1974, the GST tax did not exist. Had Mr. Peterson known that the GST tax would be enacted, petitioner argues, he would have modified his estate plan to prevent or defer the imposition of the tax. Because of Mr. Peterson's reliance on the nonexistence of the GST tax

at the time of his death, petitioner concludes, the imposition of the GST tax in this case constitutes an unconstitutional retroactive application of a wholly new tax.

We believe that petitioner's focus on Mr. Peterson's activities prior to the 1986 enactment of the current GST tax regime is misplaced. Neither Mr. Peterson's execution of his estate plan documents nor the creation and initial funding of the marital trust upon Mr. Peterson's death in 1974 triggered the GST tax at issue in the present case. The critical event for purposes of the GST tax was Mrs. Peterson's failure to exercise her general power of appointment upon her death in 1987. It was this event, which occurred after the 1986 enactment of the GST tax statute, that allowed the marital trust property to pass to the grandchildren's trusts, thereby causing a "direct skip".

Petitioner is therefore incorrect in asserting that the GST tax is being applied retroactively to actions taken by Mr. Peterson prior to the enactment of the tax. Had Mrs. Peterson chosen to do so, she could have revised her will after the 1986 GST tax enactment to provide for the testamentary exercise of her general power of appointment in favor of persons who were not skip persons. Although such an exercise might have been contrary to Mr. Peterson's expectations, it would have enabled the assets to pass free of the GST tax upon Mrs. Peterson's death. Accordingly, the application of the GST tax to the transfers at issue does not constitute an impermissible retroactive application of the tax in violation of the Due Process Clause.

Our conclusion is supported by the recent decision of the U.S. Supreme Court in *United States v. Irvine*, 511 U.S. \_\_\_\_, 114 S. Ct. 1473 (1994). In that case, the taxpayer was a beneficiary of a trust created by her grandfather in 1917. The taxpayer learned of her contingent remainder interest in the trust as early as 1931 when she reached age 21. In 1979 she disclaimed a portion of her remainder interest in the trust, thereby causing that portion to be distributed to her children.

The Supreme Court held that the disclaimer resulted in a taxable gift from the taxpayer to her children, even though the disclaimed trust interest had been created prior to the 1932 enactment of the Federal gift tax. The taxpayer argued that the application of the gift tax to an interest created in

1917, prior to the enactment of the Federal gift tax, constituted an impermissible retroactive application of a new tax.[13] The Supreme Court rejected the taxpayer's focus on the 1917 establishment of the trust interest. The Court observed that "The critical events, the transfers of fractional portions of * * * [the taxpayer's] remainder to her children, occurred after enactment of the gift tax, though the interests transferred were created before that date." *Id.* at ____, 114 S. Ct. at 1482.

Similarly, the transfers in the present case occurred upon Mrs. Peterson's death after enactment of the GST tax, even though the interests transferred had been created upon Mr. Peterson's death in 1974. In a statement equally applicable to petitioner's contention in the present case, the Supreme Court observed that "a tax 'does not operate retroactively merely because some of the facts or conditions upon which its application depends came into being prior to the enactment of the tax.'" *Id.* at ____, 114 S. Ct. at 1482–1483 (quoting *United States v. Jacobs*, 306 U.S. 363, 367 (1939)).

b. *Equal Protection Clause*

Petitioner also contends that the imposition of the GST tax constitutes a violation of the equal protection principles of the Fifth Amendment.[14] According to petitioner, the GST tax impermissibly treats individuals, such as Mr. Peterson, who died before 1982 and established section 2056(b)(5) marital deduction trusts, less favorably than individuals who died after 1981 and established section 2056(b)(7) "QTIP" trusts. Whereas the estate of a decedent in the latter category is entitled to make a "reverse QTIP" election under section 2652(a)(3), thereby causing the donor spouse to be treated as the transferor for purposes of the GST tax, no such election

---

[13] The taxpayer's argument in *United States v. Irvine*, ____U.S. ____, 114 S. Ct. 1473 (1994), was based on the Federal gift tax enabling legislation, which specifically prohibited the application of the gift tax statute to transfers antedating the enactment of the act. *Id.* at ____, 114 S. Ct. at 1482. The Supreme Court indicated that this statutory provision was grounded in due process principles. *Id.* Accordingly, the Supreme Court's analysis in *Irvine* is applicable to the due process issue raised in the present case.

[14] The Fourteenth Amendment provides that no State shall deny to any person the equal protection of the laws. Although the Fifth Amendment, applicable to the Federal Government, has no equal protection clause, its due process guarantees incorporate similar equality principles. *Regan v. Taxation with Representation*, 461 U.S. 540, 542 n.2 (1983); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

is permitted for donor spouses, such as Mr. Peterson, in the former category.[15]

In general, "statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose." *Regan v. Taxation with Representation*, 461 U.S. 540, 547 (1983). Moreover, "Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Id.*[16] Accordingly, the different GST tax treatment accorded (1) individuals who died before 1982 and established section 2056(b)(5) marital deduction trusts and (2) individuals who died after 1981 and established section 2056(b)(7) QTIP trusts is permissible if a rational basis exists for the disparate treatment. In order to make this determination, we must analyze the relevant differences between a section 2056(b)(5) marital deduction trust and a section 2056(b)(7) QTIP trust.

Section 2056(b)(5), upon which Mr. Peterson apparently relied in preparing his estate plan, allows a transfer in trust to qualify for the Federal estate tax marital deduction of section 2056(a) if the transfer meets certain requirements. This section requires, inter alia, that the surviving spouse must have a lifetime income interest in the trust property and must be given a power, exercisable by will or during life, to appoint the trust property to herself or her estate (whether or not the power is exercisable in favor of others). Sec. 2056(b)(5). Because the power of appointment given to the surviving spouse constitutes a general power of appointment under section 2041(b)(1), the property over which she holds the power is included in her gross estate upon her death. Sec. 2041(a)(2). Pursuant to these provisions, Mr. Peterson was able to utilize the marital deduction with respect to the property passing to the marital trust, and the value of the trust property was included in Mrs. Peterson's gross estate at the time of her death.

---

[15] If Mr. Peterson's estate were permitted to treat Mr. Peterson as the transferor, the transfers to the grandchildren's trusts would qualify as transfers to the grandchildren of the transferor and would be eligible for the benefits of the grandchild exclusion of TRA 1986 sec. 1433(b)(3).

[16] Although "Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right, such as freedom of speech, or employ a suspect classification, such as race", *Regan v. Taxation with Representation, supra* at 547, no such fundamental right or suspect classification is present in this case.

Section 2056(b)(7), enacted by the Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 403(d)(1), 95 Stat. 302–303, permits a marital deduction for "qualified terminable interest property". Sec. 2056(a) and (b)(7).[17] A trust that holds such property is referred to as a QTIP or section 2056(b)(7) trust. A trust qualifies as a QTIP trust if, inter alia, the spouse is entitled to all of the income from the trust property, payable annually or at more frequent intervals, and the executor of the decedent's estate makes an election to treat the trust as a QTIP trust. Sec. 2056(b)(7)(B). Unlike a section 2056(b)(5) marital deduction trust, the surviving spouse need not be given a general power of appointment over the property in a QTIP trust. Upon the death of the surviving spouse, the corpus of the trust generally is transferred to the remainderman named by the donor spouse. Despite the surviving spouse's lack of a general power of appointment over the QTIP trust property, the value of the property is included in her gross estate upon her death. Sec. 2044(b)(1)(A).

Because the property in both a section 2056(b)(5) marital deduction trust and a section 2056(b)(7) QTIP trust is included in the gross estate of the beneficiary surviving spouse, the surviving spouse is generally treated as the "transferor" of that property for purposes of the GST tax upon her death. See sec. 2652(a)(1)(A). However, the estate of a decedent donor spouse who transfers property to a section 2056(b)(7) QTIP trust may elect to treat the decedent donor spouse as the "transferor" of the trust property for purposes of the GST tax. Sec. 2652(a)(3)(A). Petitioner bases its equal protection argument on the lack of availability of this "reverse QTIP" election with respect to a section 2056(b)(5) marital deduction trust, such as the marital trust.

We believe that a rational basis exists for allowing a reverse QTIP election for a section 2056(b)(7) QTIP trust while not permitting such an election for a section 2056(b)(5) marital deduction trust. Whereas the surviving spouse beneficiary of a section 2056(b)(5) marital deduction trust possesses a general power of appointment over the trust assets, thereby retaining control over the ultimate disposition of the assets, the surviving spouse beneficiary of a section 2056(b)(7) QTIP

---

[17] This provision is applicable to estates of decedents dying after Dec. 31, 1981. Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 403(e)(1), 95 Stat. 305.

trust need not be given such a power. The desire to permit the deceased donor spouse to retain control over the ultimate disposition of property in which the surviving spouse is given a life estate was a primary reason for the enactment of section 2056(b)(7) and its QTIP rules. See H. Rept. 97–201, at 159–160 (1981), 1981–2 C.B. 352, 377–378; 127 Cong. Rec. 17289 (1981) (statement of Sen. Symms).

Because the decedent donor spouse, in effect, controls the ultimate disposition of the assets of a section 2056(b)(7) QTIP trust, it is reasonable to permit the decedent donor spouse's estate to make a reverse QTIP election and treat the decedent donor spouse as the transferor of the property for purposes of the GST tax. In contrast, under a section 2056(b)(5) marital deduction trust, the surviving spouse possesses control over the ultimate disposition of the property by reason of her general power of appointment. Because the decedent donor spouse of such a trust does not control the ultimate disposition of the trust property, there is not the same reason to permit the decedent donor spouse to be treated as the transferor of the property for purposes of the GST tax.

Because a rational basis exists for the differing tax treatments about which petitioner complains, we hold that the imposition of the GST tax in the present case does not constitute a violation of equal protection principles.

Issue 4. *Calculation of GST Tax—Exclusion of Interest Due With Respect to GST Tax Deficiency*

Petitioner's final argument relates to the computation of the GST tax deficiency if, as we have held, the transfers at issue are subject to the GST tax. Petitioner contends that in calculating the GST tax, the amount of interest accrued and payable on the GST tax deficiency must be excluded from the GST tax base. In contrast, respondent contends that the tax base is determined without allowing a deduction for interest on the tax deficiency. For the reasons set forth below, we agree with petitioner.

As discussed above, three types of transfers constitute a generation-skipping transfer: Taxable distributions, taxable terminations, and direct skips. Sec. 2611(a). The tax base, also referred to as the "taxable amount", used to calculate the GST tax varies with the type of generation-skipping

transfer involved. Secs. 2621, 2622, and 2623. In the case of a taxable distribution, the taxable amount is "the value of the property received by the transferee," reduced by "any expense incurred by the transferee in connection with the determination, collection, or refund of" the GST tax. Sec. 2621(a). In the case of a taxable termination, the taxable amount is "the value of all property with respect to which the taxable termination has occurred," reduced by expenses, indebtedness, and taxes of the kind that would be allowable under section 2053 (relating to the Federal estate tax). Sec. 2622. In the case of direct skips, such as the transfers at issue, the taxable amount is "the value of the property received by the transferee." Sec. 2623.[18]

Respondent argues that these statutory provisions require that no deduction be allowed for interest expenses in the context of a direct skip. Respondent emphasizes that the definitions of taxable amount with respect to taxable distributions and taxable terminations explicitly permit a deduction for certain administrative type expenses, whereas the definition of taxable amount with respect to direct skips makes no such reference to expenses. According to respondent, the clear implication of this discrepancy is that no such expense deductions are permitted for direct skips, such as the transfers at issue in the present case.

We disagree with respondent's reasoning. Although the definition of taxable amount in the case of a direct skip contains no explicit reference to a deduction for administrative expenses, this statutory silence must be analyzed in conjunction with the rules specifying the person liable for payment of the GST tax. In the context of these rules, the lack of explicit reference to a deduction for administrative expenses does not preclude the exclusion of interest expenses from the direct skip taxable amount.

The person liable for payment of the GST tax varies with the type of transfer involved. Sec. 2603(a). In the case of direct skips from a trust, such as the transfers in the present case, the trustee of the trust is liable for payment of the GST

---

[18] Because the GST tax on a direct skip is imposed only on the amount received and the taxable amount does not include the amount of the GST tax, the tax on a direct skip is sometimes referred to as "tax-exclusive". H. Rept. 99–426 (1985), 1986–3 C.B. (Vol. 2) 1, 827. In contrast, the GST tax on a taxable distribution and a taxable termination is referred to as "tax-inclusive" because the taxable amount of these transfers includes the amount of the GST tax. *Id.*

tax. Sec. 2603(a)(2).[19] Accordingly, the trustee is responsible for payment of the expenses related to the payment of the tax. The accrued interest payable with respect to the GST tax deficiency is one such administrative expense. Cf. *Estate of Bahr v. Commissioner*, 68 T.C. 74 (1977) (interest expense on estate tax deficiency is deductible administrative expense for purposes of estate tax to extent allowable under local law). When the direct skip constitutes a residual transfer of the trust assets, the value of the property received by the transferee will be net of any GST tax and administrative expenses (including interest expenses) that the trustee is required to pay. Because only the net value of property actually received by the transferee is included in the taxable amount under section 2623, it is appropriate that section 2623 does not contain an explicit deduction for administrative expenses.[20] See Stephens et al., Federal Estate and Gift Taxation, par. 14.04[3], at 14–10 (6th ed. 1991).

Because the transfers to the grandchildren's trusts constitute residual distributions of the marital trust assets, the net value of the marital trust property to which the grandchildren's trusts are entitled will be reduced by any interest on the GST tax deficiency that the trustee is required to pay. Petitioner asserts, and respondent does not dispute, that the interest expenses will be paid from the marital trust before the property is distributed to the grandchildren's trusts, or the property will be distributed subject to a charge for the interest expense. In either case, to the extent that the interest expense payable by the trustee actually reduces the net amount of "the value of the property received by the

---

[19] In the case of a direct skip not from a trust, the transferor is liable for payment of the GST tax. Sec. 2603(a)(3).

[20] In contrast, in the context of the statutory regimes for both taxable distributions and taxable terminations, an explicit reference to the deductibility of administrative expenses is appropriate. As with a direct skip, the taxable amount of a taxable distribution is based on the value of property received by the transferee. Sec. 2621(a)(1). Unlike a direct skip, however, the transferee of a taxable distribution (rather than the trustee) is liable for payment of the GST tax and the related expenses. Sec. 2603(a)(1). Because the amount received by the transferee includes the property that will be used by the transferee to pay administrative expenses, sec. 2621(a)(2) explicitly allows a reduction in the taxable amount for these expenses.

As with a direct skip, the trustee is liable for payment of the GST tax in the case of a taxable termination. Unlike a direct skip, however, the taxable amount in the case of a taxable termination is based on the gross amount of property with respect to which the taxable termination occurs (rather than the net amount actually received by the transferee). Sec. 2622(a)(1). Because this gross amount includes the property that will be used by the trustee to pay administrative expenses, sec. 2622(a)(2) explicitly allows a deduction for these expenses.

transferee", the interest expense will be excluded from the calculation of "taxable amount" under section 2623.

To reflect the foregoing,

*Decision will be entered under Rule 155.*