118 T.C. No. 16


UNITED STATES TAX COURT


ESTATE OF ALDO H. FONTANA, DECEASED, RICHARD A. FONTANA AND JOAN
F. REBOTARRO, CO-EXECUTORS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6635-00.                    Filed March 28, 2002.


        A and D, husband and wife, owned all of L's stock as
community property.  D predeceased A, leaving 44.069 percent of
L's stock to a trust over which A had a testamentary general
power of appointment.  A also owned 50 percent of L's stock
outright.
        <u>Held</u>:  For Federal estate tax valuation purposes, the stock
subject to A's general power of appointment must be aggregated
with stock A owned outright.


        <u>Owen G. Fiore</u>, <u>John F. Ramsbacher</u>, and <u>Erin M. Wilms</u>, for

petitioner.

        <u>G. Michelle Ferreira</u>, for respondent.

OPINION

FOLEY, <u>Judge</u>:  By notice dated March 15, 2000, respondent determined an $830,720 Federal estate tax deficiency.  The issue for determination is whether, for valuation purposes, stock owned outright by Aldo H. Fontana must be aggregated with stock over which he possessed a general power of appointment (GPA), exercisable only in his will (testamentary GPA).

## Background

Aldo and Doris F. Fontana, husband and wife, had two children, Richard A. Fontana and Joan F. Rebotarro.  Prior to Doris's death on April 18, 1993, Aldo and Doris owned, as community property, all of the outstanding voting and nonvoting common shares of Fontana Ledyard Co., Inc. (Ledyard).  Pursuant to Doris's will, the residue of her estate was divided into two trusts, Trust A and Trust B.  Aldo was trustee of both trusts.  Trust A and Trust B held 2,834 and 381 voting, and 18,090 and 2,435 nonvoting, shares of Ledyard, respectively.  During his lifetime, Aldo received, from both trusts, all income and such principal as was necessary for his proper support, care, maintenance, and education.  During his lifetime, Aldo had no power to control distribution of the trusts' assets, other than as a fiduciary.  Aldo had a testamentary GPA over the assets held by Trust A, and as a result Doris's estate received a marital

deduction pursuant to section 2056(b)(5).[1]  The testamentary GPA gave Aldo the authority to direct the disposition of Trust A's principal and any undistributed income to "one or more persons and entities, including his own estate, * * * either outright or in trust".

On January 11, 1996, Aldo died testate.  At his death, Aldo owned outright 50 percent, and Trust A held 44.069 percent, of Ledyard stock.  Pursuant to his testamentary GPA, Aldo divided the assets of Trust A into two separate trusts created for the benefit of Richard and Joan, respectively.  In addition, the Trust B property was transferred, pursuant to Doris's will, to two separate trusts created for the benefit of Richard and Joan. The residue of Aldo's estate, which included the Ledyard stock he owned outright, also passed to similar, separate trusts created for the benefit of Richard and Joan.

The estate filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on April 1, 1997, and a Supplemental Form 706 on May 20, 1997.  The estate reported that the 50-percent block of Ledyard stock Aldo owned outright and the 44.069-percent block of stock held by Trust A were includable in Aldo's gross estate, pursuant to sections 2033 and 2041, respectively.  The estate valued each block separately.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that the 50- and 44.069-percent blocks of stock should be valued as a 94.069-percent block. A 94.069-percent block had a date-of-death value of $4,850,000. If not aggregated, however, the 50- and 44.069-percent blocks of Ledyard stock had date-of-death values of $2,043,500 and $1,747,500, respectively.

The parties submitted this case fully stipulated pursuant to Rule 122. When the petition was filed, Richard was a resident of Santa Cruz, California, and Joan was a resident of Millbrae, California. Aldo died a resident of Burlingame, California.

## Discussion

The value of property includable in a decedent's gross estate is generally the fair market value of such property on the decedent's date of death. Sec. 2031(a); sec. 20.2031-1(b), Estate Tax Regs. For transfer tax purposes, the fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs.

Respondent contends that Aldo's testamentary GPA is essentially equivalent to outright ownership, and, as a result, the Ledyard stock held by Trust A should be aggregated, for valuation purposes, with the stock Aldo owned outright. The

estate contends that the blocks of stock should not be aggregated.

1.   Estate of Mellinger

The estate's primary contention is that we should extend our holding in Estate of Mellinger v. Commissioner, 112 T.C. 26 (1999), to prevent aggregation of stock owned outright by the decedent with stock subject to a testamentary GPA.  In Estate of Mellinger, Frederick Mellinger's will created a qualified terminable interest property (QTIP)[2] trust for the benefit of his wife, Harriett.  Id. at 27.  The QTIP trust contained Frederick's interest in Frederick's of Hollywood stock that he and Harriett had owned, as community property.  Id.  Upon Harriett's death, respondent sought to aggregate, for valuation purposes, the stock she owned outright with the stock held by the QTIP trust.  Id. We concluded that, for valuation purposes, stock held by a QTIP trust would not be aggregated with stock owned outright by Harriett.  Id. at 38; accord Estate of Bonner v. United States, 84 F.3d 196, 198 (5th Cir. 1996).

a.   Qualified Terminable Interest Property

The marital deduction is generally not allowed for a property interest passing to a surviving spouse if on lapse of time, or occurrence or failure of an event or contingency, such

---

[2]  QTIP is, pursuant to sec. 2056(b)(7)(B)(i), property "(I) which passes from the decedent, (II) in which the surviving spouse has a qualifying income interest for life, and (III) to which an election under this paragraph applies."

interest will terminate or fail (terminable interest rule). Sec. 2056(b)(1). Section 2056(b)(7) provides an exception to this general rule and allows a marital deduction for QTIP even though the surviving spouse receives only an income interest and has no control over the ultimate disposition of the property.

The value of QTIP is included in a surviving spouse's estate pursuant to section 2044(a). In the legislative history accompanying the enactment of sections 2044 and 2056(b)(7), the House Ways and Means Committee noted that prior to the enactment of sections 2044 and 2056(b)(7) "the marital deduction [was] available only with respect to property passing outright to the spouse or in specified forms which [gave] the spouse control over the transferred property". H. Rept. 97-201 at 159-160 (1981), 1981-2 C.B. 352, 377. The House Ways and Means Committee concluded that "a deduction should be permitted for certain terminable interests", but "property subject to terminable interests qualifying for the marital deduction should be taxable * * * upon the death of the second spouse". H. Rept. 97-201, supra, 1981-2 C.B. at 378. Thus, pursuant to section 2044(c), property subject to a section 2056(b)(7) election "shall be treated as property passing from the decedent" (emphasis added), despite the fact that the surviving spouse does not control the ultimate disposition of the property.

b.    <u>General Power of Appointment Trusts</u>

Property in which a surviving spouse has a life interest may also qualify for an exception to the terminable interest rule, and, thus, for the marital deduction, if pursuant to section 2056(b)(5), the surviving spouse has a GPA relating to such property.  Sec. 2056(b)(5).  Section 2041(a) generally requires that the value of all property over which the decedent at death possesses a GPA be included in a decedent's estate.

Historically, a GPA has been equated with outright ownership of the property because the powerholder (i.e., the decedent) can appoint the property to his estate and, thus, dispose of it as his or her own property.  <u>Graves v. Schmidlapp</u>, 315 U.S. 657, 659 (1942) (stating "For purposes of estate * * * taxation the power to dispose of property at death is the equivalent of ownership"); <u>Peterson Marital Trust v. Commissioner</u>, 78 F.3d 795 (2d Cir. 1996) (stating "For tax purposes, a general power of appointment has for many, many years been viewed as essentially identical to outright ownership of the property"), affg. 102 T.C. 790 (1994). In fact, the legislative history to section 402(e) of the Revenue Act of 1918, ch. 18, 40 Stat. 1097, the predecessor to section 2041, states:

> A person having a general power of appointment is, with
> respect to disposition of the property at his death, in
> a position not unlike that of its owner.  The possessor
> of the power has full authority to dispose of the
> property at his death, and there seems to be no reason
> why the privilege which he exercises should not be

taxed in the same degree as other property over which he exercises the same authority. * * * [H. Rept. 767, 65th Cong. 2d Sess. 41-42 (1918), 1939-1 C.B. (Part 2) 86, 101.]

In Estate of Mellinger v. Commissioner, supra at 35-36, we reasoned that although section 2044 required that property held by the QTIP trust be included in Harriett's (i.e., the surviving spouse's) gross estate, the property "[did] not actually pass to or from" her, and that she "at no time" possessed "control" or had "any power of disposition over" the property. Unlike Harriett, who could not control the ultimate disposition of the property held by the QTIP trust, Aldo possessed a testamentary GPA, which allowed him to control the ultimate disposition of the stock. Thus, pursuant to the GPA, Aldo, at the moment of death (i.e., the critical moment for estate tax valuation purposes), had control and power of disposition over the property. Accordingly, the Ledyard stock subject to Aldo's testamentary GPA must be aggregated with Ledyard stock Aldo owned outright.

2. Family Attribution Rules

The estate further contends that aggregation is inappropriate because the Ledyard stock held by Trust A should not be attributed to Aldo. The estate, relying primarily on Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982), Estate of Bright v. United States, 658 F.2d 999 (5th Cir. 1981), and Estate of Bonner v. United States, supra, and sections 267, 318,

and 544, contends that "unity of ownership" principles should not be applied without a clear directive from Congress.

The estate's reliance on those cases and statutes is misplaced because they address situations in which property owned by one person, or entity, is to be attributed to another.  In contrast, Aldo, at the moment of death, had the power to appoint the stock held by Trust A, just as he had the power to determine who would receive the stock he owned outright.  In Propstra, Mr. Propstra's estate included an undivided 1/2 interest in real estate parcels owned, as community property, by Mr. Propstra and his wife.  Propstra v. United States, supra at 1250.  The court concluded that it was not reasonable to assume Mr. Propstra's estate and Mr. Propstra's spouse would sell their respective community property interests together to maximize their respective economic returns.  Id. at 1251-1252.  Under such circumstances, the courts, absent statutory authority, have consistently rejected respondent's attempts to aggregate stock interests held by family members.  Id. at 1252; see also Estate of Bright v. United States, supra.  We, however, are not confronted with two individuals acting independently and having potentially different interests and motivations.  Aldo alone controlled the ultimate disposition of both blocks of stock.  Thus, attribution rules simply are not relevant.  We sustain respondent's determination.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.