COMERICA BANK, N.A., Executor of
the Estate of Russell V. Dancey,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 95–1024.

United States Court of Appeals,
Sixth Circuit.

Argued June 3, 1996.

Decided Aug. 12, 1996.

Carl F. Jarboe (argued and briefed), Abbott, Nicholson, Quilter, Esshaki & Youngblood, Detroit, MI, for Plaintiff–Appellant.

Gary R. Allen, Acting Chief (briefed), Linda E. Mosakowski (argued), Ann Belanger Durney (briefed), Jonathan A. Wasserman (briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, Geneva S. Halliday, Asst. U.S. Attorney, Detroit, MI, for Defendant–Appellant.

Before MERRITT, Chief Judge, COLE, Circuit Judge, and ECHOLS, District Judge.*

MERRITT, Chief Judge.

In this somewhat complex action for recovery of federal "generation skipping" transfer taxes paid by Comerica Bank on behalf of the Estate of Russell V. Dancey, the Trust Agreement, in particular Section 2.2C of the trust uses the term "receipt." If "receipt" is interpreted as conferring a vested interest in Settlor's grandchildren at the time of Settlor's death, then the generation skipping transfer tax exemption of $2,000,000.00 will be available to the grandchildren and their payment of taxes to the Internal Revenue Service must be refunded. If however, the term "receipt" is interpreted as meaning actual, "physical receipt," as contended by the Internal Revenue Service, rather than the "right to receive," then the grandchildren are not entitled to the exemption and the judgment of the District Court for the Internal Revenue Service must stand. The specific issue before us is as follows: When a trust provides that the trust corpus shall be distributed to grandchildren but to others "in the event" of a grandchild's death "before receipt," does the trust fall within language of Section 1433(b)(3)(B)(ii), providing for a generation skipping tax exemption if the trust assets in question "will be includible in the gross estate of the grandchild if the grandchild dies before the trust is terminated"? We believe that the answer is "yes" in this case. Therefore, for the reasons discussed below, we **REVERSE** the District Court's grant of summary judgment for the Internal Revenue Service.

## FACTS

Russell V. Dancey (Dancey or Settlor) executed the Russell V. Dancey Trust Agreement on May 25, 1983. J.A. at 48. Comerica Bank is the Executor of the Russell V. Dancey Trust. Dancey died on February 6, 1987, and his will bequeathed the residue of his estate to the Russell V. Dancey Trust.

* The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennes-        see, sitting by designation.

Each of his grandchildren received slightly less than $2,000,000.00 from the residue of the estate.

The operative language of the Trust instrument states:

All of the rest and residue remaining, including my undistributed income, if such be the case, of those trust funds being administered by the Trustees as provided herein, and after provision for those transfers of funds and properties and the payment of those obligations as provided herein, shall be distributed in equal shares to Settlor's three grandchildren, i.e. SUSAN G. HEMMINGER, THOMAS A. GODARD and TIMOTHY F. GODARD, share and share alike. It is the Settlor's intention that any child or children adopted by Settlor's daughter shall receive the same share as though he or she were the natural issue and said Trustees shall give equal consideration to such grandchildren whether they be natural or adopted.

In the event that any of the Settlor's grandchildren **shall die before receipt** of the corpus of the trust as provided herein leaving issue surviving, then the issue of such deceased grandchild shall take their parent's share by right of representation.

In the event one or more of said three grandchildren of Settlor **shall die before receipt** of the corpus of the trust as provided herein leaving no issue surviving, then such deceased grandchild's share shall be distributed in equal shares between the remaining surviving grandchild, grandchildren or issue of any deceased grandchild by right of representation, as the case may be.

J.A. at 60. (Emphasis added).

In filing the estate tax return, the Executor took the position that the transfers to Dancey's grandchildren described above qualified for the special generation-skipping transfer tax exemption, which was limited to $2,000,000 per grandchild. The IRS determined that the special $2,000,000 per grandchild exemption did not apply to the transfers to the grandchildren since the transfers were conditioned on the grandchildren surviving to actual physical receipt of the Trust corpus. The tax deficiency was paid by the Estate and a claim was made for a refund. That refund was denied, and the estate filed this suit for a refund in the court below.

The parties filed cross motions for summary judgment. The sole issue was whether the condition in paragraphs two and three of Section 2.2C of the Dancey Trust satisfied the requirement for the exemption provided by Section 1433(b)(3), as amended by Section 1014(h)(3)(A) of the Technical and Miscellaneous Revenue Act of 1988. Sections 1433 and 1014 require that the interest received by the grandchild, viewed as of the moment of the decedent's death, must necessarily be includible in the gross estate of the grandchild in order to be allowed to claim the $2,000,000.00 exemption. The Estate contended that the language in the Dancey trust that "[i]n the event that any of the Settlor's grandchildren shall die before receipt of the corpus of the trust" created an ambiguity as to Dancey's intent because it is unclear whether the grandchildren must actually physically receive their share of the corpus, or whether it is enough that the interest of the grandchildren become vested upon Dancey's death. Since the language was ambiguous, the Estate argued, Michigan law in favor of early vesting mandated that the interest should be treated as vested, and thus the grandchildren should be entitled to the exemption.

On the other hand, the IRS argued that there was no ambiguity in the language of the trust. They argued that the interests of the grandchildren were not perfected under the trust until they had actual "receipt" of the corpus, and that therefore their interests did not vest at Dancey's death.

The District Court ruled from the bench in favor of the IRS, stating:

[I]n this particular matter—that the receipt is an important word, and in the context of this whole situation; and that the tax exemption does not apply because the grandchildren had only conditional interest at the time of death; that there was—the receipt was the key here.

J.A. at 142.

## ANALYSIS

The generation skipping transfer tax was first introduced into our tax code in

1976. See Tax Reform Act of 1976, Pub.L. 94–455, § 2006, 90 Stat. 1879–1890. The generation skipping transfer tax in its current form was enacted by the Tax Reform Act of 1986. See Pub.L. 99–514, §§ 1431–1433, 100 Stat. 2717–2732. The generation skipping transfer tax laws were enacted to ensure taxation of generation skipping transfers in a comparable manner to outright transfers from one generation to the next, and to remove the estate planning tool of escaping taxation by skipping a generation in an estate transfer. This goal had been most commonly achieved by giving a life estate to the next generation with the remainder to the succeeding generation. After the 1976 and 1986 tax law changes, however, this method of insulating transfers from taxation was no longer available in the same wholesale manner as before. The most current version of the generation skipping transfer tax is imposed by 26 U.S.C. § 2601.

There is a special exemption from the generation skipping transfer tax for certain direct skips and transfers in trust to grandchildren of the transferror or grantor. This special exemption is limited to $2,000,000 per grandchild per grantor. The trust or transfer must satisfy the requirements of Section 1433(b)(3)(B)(i), (ii) and (iii) of the Tax Reform Act of 1986, as amended by Section 1014(h)(3)(A) of the Technical and Miscellaneous Revenue Act (TAMRA) of 1988, Pub.L. 100–647.

That section provides:

(3) Treatment of certain transfers to grandchildren.

(A) In general.—For purposes of chapter 13 of the Internal Revenue Code of 1986 [this chapter], the term 'direct skip' shall not include any transfer before January 1, 1990, from a transferor to a grandchild of the transferor to the extent the aggregate transfers from such transferor to such grandchild do not exceed $2,000,000.

(B) Treatment of transfers in trust.— For purposes of subparagraph (A), a transfer in trust for the benefit of a grandchild shall be treated as a transfer to such grandchild if (and only if)—

(i) during the life of the grandchild, no portion of the corpus or income of the trust may be distributed to (or for the benefit of) any person other than such grandchild,

(ii) the assets of the trust will be includible in the gross estate of the grandchild if the grandchild dies before the trust is terminated, and

(iii) all of the income of the trust for periods after the grandchild attained age 21 will be distributed to (or for the benefit of) such grandchild not less frequently than annually.

Section 1433 of Pub.L. 99–514, as amended by Pub.L. 100–647, Section 1014(h)(1)(3)(A).

The only section at issue in this case is section (B)(ii), which makes the exemption turn on whether or not the assets of the trust will be includible in the gross estate of the grandchild if the grandchild dies before the trust is terminated. In the instant case, this clause means: If the grandchild had received an interest in property whose entire value would not be includible in his or her gross estate if he or she were to die immediately after the transferor, Dancey, then there is no transfer under Section 1433(b)(3)(B)(ii). Therefore, the special $2,000,000 per grandchild exemption from the generation skipping transfer tax would not be available.

■ The value of a decedent's gross estate is determined by 26 U.S.C. § 2033. That section provides that the value of a gross estate includes the value of all property to the extent of the interest therein held by the decedent at the time of his or her death. Generally, if interests are contingent, they are not includible in the decedent's gross estate, whereas, if the interests are vested, then they are includible in the gross estate under Section 2033. See *Huggins v. United States,* 684 F.2d 417, 420–421 (6th Cir.1982); *see also Estate of Graham v. Comm'r. of Internal Revenue,* 46 T.C. 415, 423, 1966 WL 1167 (1966). State law, here Michigan law, determines whether an interest is vested or contingent. See *Morgan v. Comm'r. of Internal Revenue,* 309 U.S. 78, 80, 60 S.Ct. 424, 425–26, 84 L.Ed. 585 (1940); *First Kentucky Trust Co. v. United States,* 737 F.2d 557, 559 (6th Cir.1984).

Michigan law states a preference for early vesting if the language of the instrument, will or trust, is ambiguous as to the transferor's intent. *See Matter of Dodge Testamentary Trust,* 121 Mich.App. 527, 330 N.W.2d 72 (1982); *In re Jamieson Estate,* 374 Mich. 231, 132 N.W.2d 1 (1965) ("Indeed, we have characterized as a rule of property not to be disturbed the rule that when ambiguity exists whether a testator intended to condition a remainderman's taking of an estate merely upon survival of the testator or upon survival of the holder of a precedent estate, the latter condition should not be implied."). "Only the clearest expression of a preference for delayed vesting would justify a departure from the rule favoring early vesting." *See Matter of Dodge Testamentary Trust,* 121 Mich.App. at 544, 330 N.W.2d at 81. In this case, the IRS argues that the instrument is not ambiguous, but rather it is clear on its face that the transferor was not bestowing a vested interest in his grandchildren. The Estate argues that the language is ambiguous, that it is not clear whether the phrase "shall die before receipt of the corpus of the trust" creates an interest that vested at the time of Dancey's death, or whether the beneficiaries had to survive to actually physical receipt of the corpus of the trust. The general rule in Michigan is that title to real and personal property in a gift passes to the beneficiary on the date of death of the decedent. *See Richards v. Pierce,* 44 Mich. 444, 7 N.W. 54 (1880); *Stewart v. Hunt,* 303 Mich. 161, 5 N.W.2d 737 (1942). The Estate argues that therefore a beneficiary "receives" his or her interest at the date of death of the testator.

In this case, the language of the instrument is ambiguous as to the time the interests in the corpus of the trust vest in the grandchildren. It could be that the transferor meant to create a vested interest, giving the grandchild a "right to receive" upon transferor's death, or, on the other hand, it could be that the transferor meant to create interests contingent on the beneficiaries surviving the distribution of the trust assets. We therefore have an ambiguity, and the rule in Michigan favoring early vesting is applicable unless there is the "clearest expression of a preference for delayed vesting."

*See Matter of Dodge Testamentary Trust,* 121 Mich.App. at 544, 330 N.W.2d at 81.

Michigan courts have apparently not been presented with language similar to the "receipt" language present in this case; but, a common sense interpretation of this phrase, "shall die before receipt of the corpus of the trust," indicates that receipt means entitled to receive, or that the interest vests upon the testator's death and does not have to await actual physical receipt. If the transferor or settlor intended to condition the vesting of the beneficiaries' interest on the happening of a certain event, he could have clearly stated so. For instance, he could have stated that the beneficiaries were not entitled to take until they survived distribution, or until they survived probate. There is no such language in the operative clause of the instrument.

In addition, there is language in another part of the instrument which indicates that the transferor or settlor believed he was transferring an interest which would vest in the beneficiaries at his death. Paragraph 3.1 of the Trust Agreement provides:

> The Trustees shall render to each of the **presently vested beneficiaries** of this Agreement an annual accounting of all receipts and disbursements in relation to the trust account, including an inventory of the trust estate held in trust for such beneficiary.

J.A. at 63. (Emphasis added).

If the only way for the interests which were created in favor of Dancey's grandchildren to vest was by surviving the actual distribution of assets, then there would be no need to require an annual accounting of the assets and disbursements of the trust to the "vested" beneficiaries.

In addition, the I.R.S. has issued a Private Letter Ruling (P.L.R.) addressing the includibility of assets in a beneficiary's estate under Section 2033. In that case, the trust provided:

> If any of the children of such deceased sister shall die **without having received** the principal of his or her share, then said trustees shall pay and distribute said share

to his or her children then living and all descendants of his or her children then dead, per stirpes and not per capita.

P.L.R. 7949021 (emphasis added). Relying on *Johnes v. Beers*, 57 Conn. 295, 18 A. 100 (1889) (where the Court interpreted language "shall have received" in a will as being ambiguous and held that the meaning was "shall have become entitled to receive by surviving" the testator's death), the I.R.S. recognized that the language in the trust was ambiguous and that "received" had been interpreted to mean "entitled to receive" at the death of the testator. It therefore held that the beneficiary's interest in the bequest had vested prior to the beneficiary's death even though the beneficiary did not live long enough to physically receive the bequest. In that case, this meant that there was a higher tax liability for the estate of the beneficiary. While Private letter rulings are not binding authority, they may be cited as evidence of administrative interpretation. *Phi Delta Theta Fraternity v. Comm'r. of Internal Revenue*, 887 F.2d 1302 (6th Cir.1989).

The ambiguity of the phrase "shall die before receipt" mandates application of the presumption in favor of early vesting recognized under Michigan law. That presumption, taken together with the "presently vested beneficiary" language in Paragraph 3.1 of the Trust Agreement, and the I.R.S. private letter ruling all weigh in favor of interpreting the Trust Agreement in this case as conferring interests upon the beneficiaries that vested at the death of the transferor. Since these interests vested at the date of the death of the transferor, the requirements of Section 1433(b)(3)(B)(i), (ii) and (iii) of the Tax Reform Act of 1986, as amended by Section 1014(h)(3)(A) of the Technical and Miscellaneous Revenue Act (TAMRA) of 1988, Pub.L. 100–647, have been met. The interest would be includible in the gross estate of the beneficiaries under 26 U.S.C. § 2033; and therefore the beneficiaries are entitled to the special $2,000,000 exemption from the generation skipping transfer tax. Since the tax was levied and paid prior to this action, the estate is entitled to a refund.

## CONCLUSION

For the reasons discussed above, the judgment of the District Court granting summary judgment to the Internal Revenue Service is **REVERSED** and the case remanded for proceedings consistent with this opinion.