**John M. SIMPSON & Sarah S. Dean, Trustees of the Grover M. Simpson Testamentary Trust A, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 97–1352–CV–W–SOW.

United States District Court,
W.D. Missouri,
Western Division.

Aug. 25, 1998.

Richard D. Woods, Shook, Hardy & Bacon, Kansas City, MO, for Plaintiffs.

Carl J. Tierney, U.S. Dept. of Justice, Washington, DC, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before this Court are plaintiffs' Motion for Summary Judgment (Doc. # 9), defendant's Opposition (Doc. # 14), plaintiffs' Reply (Doc. # 16), defendant's Motion for Summary Judgment (Doc. # 12), plaintiffs' Opposition (Doc. # 15), and defendant's Reply (Doc. # 17). Both Motions for Summary Judgment will be considered in this Order. For the reasons discussed below, plaintiffs' Motion for Summary Judgment is denied, and defendant's Motion for Summary Judgment is granted.

### I. *Background*

Plaintiffs John M. Simpson and Sarah S. Dean, as trustees of the Grover M. Simpson Testamentary Trust A ("Trust"), allege that defendant United States of America, through the Internal Revenue Service, incorrectly assessed a generation-skipping transfer ("GST") tax with respect to the transfer of property from the Trust.

Grover M. Simpson died in 1966, leaving a Will creating the Trust in question for the benefit of his wife, Mary Irene (Simpson) Bryan ("Mrs.Bryan"), and giving her a general power of appointment over the proceeds of the Trust. When Mrs. Bryan died in 1993, her Will exercised the general power of appointment in the Trust in favor of her eight living grandchildren. Following the transfer, the defendant audited Mrs. Bryan's estate and assessed a GST tax against plaintiffs in the amount of $47,391, plus interest of $12,174, for a total of $59,565.

Plaintiffs paid the GST tax on or about October 16, 1996. On or about December 16, 1996, plaintiffs filed a Claim for Refund and Request for Abatement requesting a refund of the GST tax and interest paid.

### II. *Standard*

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff opposing a properly supported motion for summary judgment may not rest upon the allegations of his pleadings, "but must set forth specific facts showing there is a genuine issue for trial." *Id.*

### III. *Discussion*

Plaintiffs and defendant agree that no genuine issues of material fact exist, therefore this Court must decide if the GST tax applies to the transfer in question. Plaintiffs concede that the transfer of property in the Trust to Mrs. Bryan's grandchildren constituted a "direct skip" within the meaning of IRC § 2612(c).[1] As such, plaintiffs further concede that the transfer constituted a "generation-skipping transfer" within the mean-

---

1. All "IRC" references are to the Internal Revenue Code, 26 U.S.C. § 1, *et seq.*

The term "direct skip" means a transfer subject to a tax imposed·by chapter 11 or 12 of an interest in property to a skip person. IRC § 2612(c)(1).

Mrs. Bryan's grandchildren are "skip persons" pursuant to the provisions of the IRC:

(a) Skip Person.—For purposes of this chapter, the term "Skip Person" means—

(1) a natural person assigned to a generation which is 2 or more generations below the generation assignment of the transferor[.]

IRC § 2613.

ing of IRC § 2611,[2] and was potentially subject to the GST tax imposed under IRC § 2601.[3] The only issue, therefore, is whether this transfer was subject to the "grandfather" provision of Section 1433(b)(2)(A) of the Tax Reform Act of 1986 (Pub.L. 99–514; 100 Stat. 2731) ("TRA 1986").

The "grandfather" provision makes the GST tax inapplicable to:

(A) any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985[.]

TRA 1986 § 1433(b)(2)(A).

■ The purpose of the "grandfather" provision in TRA 1986 § 1433(b)(2)(A) is to protect the reliance interests of trust settlors that established irrevocable trusts prior to the imposition of the GST tax. *E. Norman Peterson Marital Trust v. Commissioner of Internal Revenue*, 102 T.C. 790, 799, 1994 WL 284075 (1994), *aff'd* 78 F.3d 795 (2d Cir.1996)("most logical explanation" is protection of reliance interests); *Tataranowicz v. Sullivan*, 959 F.2d 268, 277 (D.C.Cir.1992)(grandfather provisions are typically enacted to protect reliance on the "prior regime"); *Sercl v. United States*, 684 F.2d 597, 599 (8th Cir.1982)(although not specified, "most logical explanation for it is to protect taxpayers who acted in reliance on the prior, revoked ruling."). The provision, therefore, protects transfers of trust assets that could no longer be altered to avoid the GST tax.

■ Plaintiffs argue that the transfer at issue in this case should come under the "grandfather" provision because it was a transfer "under a trust" and it was not out of corpus "added" to the trust after September 15, 1985. Plaintiffs are correct in their argument that nothing was "added" to the trust. The exercise of Mrs. Bryan's general power of appointment did not constitute an actual addition to the corpus, nor did it constitute a "constructive addition" under 26 C.F.R. § 26.2601–1(b)(1)(v). To constitute a "constructive addition" under § 2 6.2601–1(b)(1)(v)(A), the exercise of the general power of appointment must leave a portion of the assets in the trust.[4] In this case, the exercise of Mrs. Bryan's power of appointment left nothing in the trust.

■ Plaintiffs are also technically correct in their argument that the exercise was "under a trust." A power of appointment exercised in accordance with a trust instrument can be said to be "under a trust." The language "under a trust" must be read to mean *in accordance with* the relevant provisions for distribution contained in the trust instrument, otherwise it would be superfluous. Therefore, the exercise of a power of appointment as set forth in a trust instrument is "under a trust." The fact that this general power of appointment was "under a trust," however, is not dispositive in this case.

The relevant activity in this case was the exercise of a general power of appointment.[5] The exercise of a general power of appointment is a special event under the IRC. Sec-

**2.** "(a) In general.—For purposes of this chapter, the term 'generation-skipping transfer' mean[s]—

. . .

(3) a direct skip."

IRC § 2611.

**3.** "A tax is hereby imposed on every generation-skipping transfer (within the meaning of subchapter B)."

IRC § 2601.

**4.** The relevant language states:

[W]here any portion of a trust remains in the trust after the post-September 25, 1985, release, exercise, or lapse of a power of appointment over that portion of the trust ... the

value of the entire portion of the trust subject to the power that was released, exercised, or lapsed is treated as if that portion had been withdrawn and immediately re-transferred to the trust at the time of the release, exercise, or lapse.

26 C.F.R. § 26.2601–1(b)(1)(v)(A).

**5.** The IRC defines "general power of appointment" as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate[.]" IRC § 2041(b)(1). This differs from a special power of appointment in which "the donee may appoint only amongst a restricted or designated class of persons other than himself." *Morgan v. Commissioner of Revenue*, 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 585 (1940).

tion 2041 of the IRC treats the exercise of a general power of appointment as an event taxable to the person holding the power by including the value of the property in the holder's gross estate. IRC § 2041(a)(2).[6] The rationale behind this treatment is that the holder of a general power of appointment maintains complete control over the disposition of the property. *Peterson Marital Trust,* 102 T.C. at 800; *Estate of Kurz v. Commissioner,* 101 T.C. 44, 50–51, 59–60, 1993 WL 270973 (1993). This puts the holder of the power in a position similar to the actual owner of the property. *Peterson Marital Trust,* 102 T.C. at 800.

As the holder of the general power, Mrs. Bryan remained in control of the disposition of the trust property until her death in 1993. Mrs. Bryan was fully able to exercise her appointment power in such a manner as to avoid the GST tax after the effective date of the "grandfather" provision. For this reason, the trust property at issue was not "irrevocably required to be distributed" to the grandchildren as of September 15, 1985. *Id.* at 801.

Had Mrs. Bryan's power been a special power of appointment, the result in this case may have been different. Plaintiffs argue that a special power of appointment may also have allowed for a transfer that would not have been effected by the GST tax and, therefore, special and general powers should be treated the same. Their argument is not persuasive in the present case. Special powers of appointment, because of their nature, are treated differently by the IRC. The exercise of a special power is not included in the gross estate of the holder of the power, unlike a general power.

Special powers are also excluded from the "constructive additions" provision of 26 C.F.R. § 26.2601–1(b)(1)(v)(B). Therefore, defendant has manifested an intent to treat special powers differently for the purposes of the GST tax. In addition, the holder of a special power does not always have the freedom to avoid the tax consequences of a generation-skipping transfer. For example, the trust instrument could limit the appointment to parties that would constitute a "direct skip." For the above reasons, the argument that they should be treated the same for the purposes of the TRA 1986 § 1433(b)(2)(A) exclusion is without merit.

In the present case, Mrs. Bryan exercised a general power of appointment. In her exercise of her general power, Mrs. Bryan chose to transfer the trust assets to her grandchildren. This action constituted a "direct skip" and was a "generation-skipping transfer" subject to the GST tax imposed under IRC § 2601. Therefore, the defendants were correct in assessing the GST tax.

### V. Conclusion

For the reasons stated above, it is hereby

ORDERED that plaintiffs' Motion for Summary Judgment (Doc. # 9) is denied. It is further

ORDERED that defendant's Motion for Summary Judgment (Doc. # 12) is granted.

---

**6.** The relevant portion of the statute states:
    (a) In general.—The value of the gross estate shall include the value of all property.
    (2) Powers created after October 21, 1942.—
      To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 ...
IRC § 2041.