# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3598WM

_____

John M. Simpson and Sarah S. Dean,      *
Trustees of the Grover M. Simpson       *
Testamentary Trust A,                   *
                                        *
            Appellants,                 *   On Appeal from the United
                                        *   States District Court
      v.                                *   for the Western District
                                        *   of Missouri.
                                        *
United States of America,               *
                                        *
            Appellee.                   *

_____

Submitted: April 22, 1999

Filed: July 23, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN,[1] Circuit Judges, and WOLLE,[2] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

---

[1] The Hon. Roger L. Wollman became Chief Judge of this Court on April 24, 1999.

[2] The Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

Grover M. Simpson died in 1966. His will created the Grover M. Simpson Testamentary Trust A. The primary beneficiary of the trust was Mr. Simpson's wife, Mary Irene Simpson, who later became Mary Irene Bryan. The trust gave Mrs. Bryan a general power of appointment by will. When she died in 1993, she exercised this power in favor of her grandchildren. This transfer is subject to a special enactment known as the Generation-Skipping Transfer tax (GST), unless it is entitled to the benefit of an effective-date provision under which transfers under a trust which was irrevocable on September 25, 1985, are not subject to the GST tax.

The District Court held that the effective-date provision does not apply to the transfer at issue in this case. Simpson v. United States, 17 F. Supp. 2d 972 (W.D. Mo. 1998). We reverse. In our opinion, the plain language of the effective-date provision referred to above covers the transfer made by Mrs. Bryan's exercise of her power of appointment, and there is no sufficient reason not to apply the plain language of the statute.

I.

Article IV., ¶ A of the will of Grover M. Simpson created the trust at issue. The trust became irrevocable on Mr. Simpson's death in 1966. Under its provisions, Mr. Simpson's widow, then known as Mary Irene Simpson, had a right to receive all of the income of the trust, and such amounts of the corpus as the trustees in their discretion might choose. In addition, Mrs. Simpson, who later remarried and became Mrs. Bryan, had a general testamentary power of appointment. That is, she had the authority, in her will, to direct that the entire corpus of the trust remaining at the time of her death, or any part thereof, be given to anyone she named, including her own estate. She thus had a general power of appointment by will, and upon her death the remaining corpus of the trust was included in her estate for purposes of the federal estate tax, see 26 U.S.C. § 2041.

Mrs. Bryan made her will in 1982. Under Section 4.01 of this instrument, she exercised her power of appointment in favor of her eight living grandchildren, share and share alike. The will became effective upon Mrs. Bryan's death in 1993. The transfer from Mrs. Bryan to her grandchildren skipped a generation – the generation of Mrs. Bryan's children. It would therefore be subject to the Generation-Skipping Transfer tax, 26 U.S.C. §§ 2601 et seq., but for the possible applicability of a special "grandfather clause," on which the taxpayers in this case rely. It is unnecessary to describe the details of the GST tax. It is sufficient for present purposes to know that the transfer was a "direct skip" within the meaning of 26 U.S.C. § 2612(c)(1), because Mrs. Simpson's grandchildren were "skip persons" within the meaning of the statute. The purpose of the statute is to ensure that generation-skipping transfers do not escape estate tax, that is, that such transfers are taxed as if they were made from one generation to the next, and then to the next after that, instead of skipping a generation. In this way, each generation would in effect bear the burden of estate taxation.

There is no dispute that the transfer in question here would be subject to the GST tax, were it not for the special effective-date rule contained in the statute, passed in 1986, that enacted the version of the GST tax effective at the time of Mrs. Bryan's death. This statute, the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2717-2732, contained, in Section 1433, the general rule that the GST tax would apply to any transfer taking place after the enactment of the statute on October 22, 1986. There were exceptions to this general rule, however, and, under Section 1433(b)(2)(A), the GST tax would not apply to:

> any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985 . . ..

Thus, the corpus of trust A remaining at the time of Mrs. Bryan's death would be subject not only to the ordinary estate tax payable by her estate, but also to the additional GST tax, payable by the trustees of trust A, unless the transfer accomplished by her exercise of her power of appointment was a "transfer under a trust which was irrevocable on September 25, 1985." Trust A, having been created by Mr. Simpson's will in 1966, was of course irrevocable on September 25, 1985. Was the transfer made by Mrs. Simpson a transfer "under" this trust? We do not see how an affirmative answer can be avoided. The power of appointment that made the transfer possible was created by the trust. Language has to mean something, and the argument that this particular transfer was not "under" trust A is simply untenable.

The parties discuss at some length what the purpose of the special effective-date provision could have been. The effective date of September 25, 1985, is the date on which the staff of the Joint Committee on Internal Revenue Taxation issued a summary of proposals for a revision of the then-existing GST tax. (The tax had first been enacted, in a different form, in 1976.) The premise of such provisions, in general, is that taxpayers, at least those with a lot at stake, follow closely proposals pending in Congress to amend the tax laws. Once the taxpayer has notice of a proposal, it is fair to subject him or her to the tax, even when the tax may be enacted some months or even years later. (Congress has power, within broad limits, to make taxing statutes retroactive, but it frequently chooses not to exercise this power.) So the provision was obviously intended to protect taxpayers who had, before September 25, 1985, taken certain irrevocable action in reliance upon the state of the tax law existing at the time of the action. What is the relevant action in the present case? The government argues that the relevant action was the exercise of the power of appointment by Mrs. Bryan, an exercise which became effective only upon her death, approximately eight years after September 25, 1985. The taxpayer argues, to the contrary, that the relevant action is the date of the creation of the trust, which occurred when Mr. Simpson died in 1966. When Mr. Simpson created the trust, there was no GST tax, and he thus had no reason to anticipate that his wife's exercise of her general testamentary power of appointment

would trigger any kind of a tax over and above the ordinary estate tax consequent upon her possession of a general power, see 26 U.S.C. § 2041.

Which side is right about the purpose of the statute? The issue is easily resolved, we think, by consulting the most important evidence of a statute's purpose – that is, its words. Recall the relevant clause: "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985." The government wants us to read the words, in effect, as though "which" modified "transfer." This is not a meaning that the words will bear. The antecedent of "which" is "trust," not "transfer." The relevant action which has to take place before September 25, 1985, is the creation of the trust, or rather its becoming irrevocable, not the occurrence of the generation-skipping transfer. We see no escape from the logic of this reasoning. In the present case, the trust became irrevocable before September 25, 1985. The transfer was made possible by the trust. The transfer was "under" the trust. The fact that the transfer occurred after September 25, 1985, and, indeed, that Mrs. Bryan, the transferor, could have avoided the GST tax by giving the property to someone other than her grandchildren, is not relevant. The point is that when the trust was created and became irrevocable Mrs. Bryan was given the authority, under the law as it then existed, to exercise her general power of appointment in favor of anyone at all, and to do so without subjecting the transfer to a GST tax, such a tax then being far in the future. This is the sort of reliance that the effective-date provision protects.

## II.

The government points out, and rightly so, that words do not always mean what they seem, and that they receive their meaning only from the context in which they are used. The government relies principally on Judge Calabresi's opinion in E. Norman Peterson Marital Trust v. Commissioner, 78 F.3d 795 (2d Cir. 1996). The facts of Peterson are similar in many respects, but, as we shall see, different in at least one crucial respect. In that case, the original settlor, E. Norman Peterson, died in 1974.

His will created a trust for the benefit of his wife, Eleanor Peterson. Mrs. Peterson was given a general testamentary power of appointment over the corpus of the trust. If the power was not exercised, the corpus was to be set aside for the Petersons' grandchildren. Mrs. Peterson died in 1987. Because she had a general power of appointment, the remaining value of the trust was then included in her gross estate under 26 U.S.C. § 2041. But in her will, Mrs. Peterson specifically stated that she was not exercising the power, except to the extent necessary to pay the estate tax attributable to the inclusion of the trust property in her estate. The power therefore lapsed, and the property remaining in the trust after payment of the estate taxes was transferred to the grandchildren.

This transfer, like the one at issue in the present case, was clearly subject to the GST tax, unless it could find shelter in the effective-date provisions of Section 1433 of Pub. L. No. 99-514. Here we again quote, for the convenience of the reader, the relevant text of that statute. The GST will not apply to

> any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985.

The question in the Peterson case was not whether the transfer effected by Mrs. Peterson's choosing not to exercise her power was "under" the trust, but rather whether the transfer had been made "out of corpus added to the trust after September 25, 1985."

There was in effect at the time a temporary regulation issued by the Commissioner, Temp. Treas. Reg. § 26.2601-1(b)(1)(v)(A), 53 Fed. Reg. 8445 (1988), corrected by 53 Fed. Reg. 18,839 (1988). This temporary regulation defined what

constituted "corpus added to the trust" for purposes of the effective-date rule.  The regulation provided, among other things, that

> where any portion of a trust remains in the trust after the release, exercise, or lapse of a [general] power of appointment over that portion of the trust . . . the value of the entire portion of the trust subject to the power that was released, exercised, or lapsed will be treated as an addition to the trust.

Temp. Treas. Reg. § 26.2601-1(b)(1)(v)(A).

Under this regulation, therefore, the transfer at issue in the <u>Peterson</u> case was clearly not entitled to the benefit of the effective-date provisions of Section 1433, because the transfer came about because of the lapse of a power of appointment, not its exercise.  The portion of the trust transferred was the portion remaining in the trust after the power had been partly exercised and had otherwise lapsed.  The main issue in <u>Peterson</u> was whether the temporary regulation was valid.  The Court held, for reasons that need not be gone into now, that it was.  The effective-date provision therefore did not apply, and the transfer was subject to the GST tax.

The distinction between <u>Peterson</u> and the present case is obvious.  Here, when the power was exercised, it was exercised with respect to the entire remaining corpus.  There was no portion of the trust remaining after the exercise.  Nor did the power lapse to any extent.  There is therefore no way to argue, and the government in fact does not argue, that the transfer at issue here is subject to the GST tax because it was made out of corpus added to the trust after September 25, 1985.  Nor is there any regulation, temporary or permanent, that applies to the particular sort of transfer made here – a transfer of the entire corpus of the trust remaining at the time of the exercise of the power.  We have no quarrel with the holding of <u>Peterson</u>, but we cannot agree with the

government that it compels or even supports the result contended for in the present case.

III.

The entire concept of written law, indeed of all verbal communication, depends on the idea that words have <u>some</u> meaning. It is true that the ingenuity of lawyers can usually scrape up some tag end of ambiguity on which to hang a policy hat. But judges are obliged, unless there is a substantial uncertainty as to the meaning of the words of a statute, to apply the statute as written, unless the words are simply nonsense, or self-contradictory, or something of that kind. This is not such a case. The words of Section 1433(b)(2)(A) are clear, at least to us, and we see no reason not to apply them. The words make it clear that Congress intended to protect the reliance of creators of trusts on the law as it existed at the time the trusts became irrevocable. That Congress could, consistently with the Constitution and with fairness, have selected another effective-date regime is not relevant. We hold that the transfer at issue in this case took place under a trust which was irrevocable on September 25, 1985. The GST tax therefore does not apply.

The judgment of the District Court is reversed, and the cause remanded to that Court with directions to enter judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-