RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0092p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ESTATE OF LOUISE BLYTH TIMKEN,
(Deceased), et al.,

              *Plaintiffs-Appellants,*

       *v.*

UNITED STATES OF AMERICA,

              *Defendant-Appellee.*

No. 09-3650

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 04-01188—John R. Adams, District Judge.

Argued: March 4, 2010

Decided and Filed: April 2, 2010

Before: SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

_____

## COUNSEL

_____

**ARGUED:** Matthew Yackshaw, DAY KETTERER LTD., Canton, Ohio, for Appellants. Joan I. Oppenheimer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Matthew Yackshaw, DAY KETTERER LTD., Canton, Ohio, for Appellants. Joan I. Oppenheimer, Richard Farber, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. The Estate of Louise Blyth Timken appeals the district court's decision on cross-motions for summary judgment that transfers from a Timken Estate trust do not fall within the statutory grandfathering exemption to the generation-

_____

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

skipping transfer tax (GST tax).  The district court correctly held, however, that the grandfathering exemption is ambiguous as applied to this case, that the regulation at issue is a reasonable interpretation of the statute, and that the transfers at issue fall within that regulation.  Therefore, the district court properly upheld the imposition of the GST tax.

## I. The grandfathering exemption to the GST tax

This case involves whether the incidence of the estate tax can skip a generation when a pre-GST-tax irrevocable trust does not mandate a generation-skipping transfer but merely grants discretion, exercisable after the GST tax was passed, to the trustee or others to skip generations in transferring trust assets.  The GST tax, codified at I.R.C. § 2601, *et seq.*, was enacted in 1976 and amended in 1986.  The tax was intended "to ensure taxation of generation skipping transfers in a comparable manner to outright transfers from one generation to the next, and to remove the estate planning tool of escaping taxation by skipping a generation in an estate transfer." *Comerica Bank, N.A. v. United States*, 93 F.3d 225, 228 (6th Cir. 1996).  However, "[t]o protect taxpayers who had legitimately made trust and estate dispositions which, although sensible when made, had become very disadvantageous, and from which they could no longer escape," *E. Norman Peterson Marital Trust v. Comm'r*, 78 F.3d 795, 798 (2d Cir. 1996), the statute includes a grandfathering clause that exempts from the tax, in some circumstances, generation-skipping transfers from trusts that were irrevocable before the GST tax's effective date.

Under this statutory grandfathering exemption, the GST tax does not apply to "any generation-skipping transfer under a trust which was irrevocable on September 25, 1985, but only to the extent that such transfer is not made out of corpus added to the trust after September 25, 1985." Tax Reform Act of 1986 § 1433(b)(2)(A), codified at I.R.C. § 2601, Effective and Applicability Provisions.  This language does not explicitly say whether the grandfathering exemption applies to an irrevocable trust which does not mandate a generation skip, but instead permits a beneficiary by discretionary power of appointment to make a generation-skipping transfer.   The Treasury Department

promulgated regulations to address this question, including the regulatory provision at issue here, the constructive additions provision, which provides:

> Constructive additions – (A) Powers of Appointment . . . [W]here any portion of a trust remains in the trust after the post-September 25, 1985, release, exercise, or lapse of a power of appointment over that portion of the trust, and the release, exercise, or lapse is treated to any extent as a taxable transfer under chapter 11 [of the Internal Revenue Code, on estate taxes] or chapter 12 [of the I.R.C., on gift taxes], the value of the entire portion of the trust subject to the power that was released, exercised or lapsed is treated as if that portion had been withdrawn and immediately retransferred to the trust at the time of the release, exercise or lapse.

Treas. Reg. § 26.2601-1(b)(1)(v)(A) (1998). This regulation permits application of the GST tax to post-statute exercises and lapses of a general power of appointment, thus treating a general power of appointment the same as outright ownership, consistent with treatment of general powers of appointment in other tax code provisions.

## II. The generation-skipping transfers in the Timken Estate trust

The Timken Estate trust became irrevocable in 1968, before the passage of the GST tax, with the death of the settlor, Henry H. Timken, Jr. The trust granted Louise Blyth Timken, the settlor's widow, a general power of appointment over the trust assets, and provided that, if that power lapsed, trust assets would be used to pay the estate tax portion due to the inclusion of the trust in her estate, and the remaining trust assets would be divided and placed in separate trusts for Henry H. Timken, Jr.'s nieces and nephews and for the children of any deceased niece or nephew. Louise Blyth Timken died in 1998 without appointing new trust successors. Therefore, her general power of appointment lapsed and the remaining trust assets passed to Henry H. Timken, Jr.'s nieces and nephews. Some nieces and nephews made qualified disclaimers of their shares, and these shares were divided equally among their children, Henry H. Timken, Jr.'s grandnieces and grandnephews. After receiving IRS notice that it owed over $4 million in GST taxes, the Estate paid the tax and sued to contest liability.

III. The district court's ruling

In the district court, the parties stipulated to the relevant facts and agreed that the Estate must pay the GST tax unless those facts fell within grandfathering exemption. The district court delayed ruling on the parties' cross motions for summary judgment until this court decided *Estate of Gerson v. Commissioner*, 507 F.3d 435 (6th Cir. 2007). This court in *Gerson* held that the grandfathering exemption was ambiguous as applied to a generation-skipping transfer resulting from the *exercise* of a general power of appointment granted in a pre-GST-tax irrevocable trust, and that a 1999 regulatory provision similar to the constructive additions provision was reasonable under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Gerson*, 507 F.3d at 439-41.

The regulatory provision at issue in *Gerson* did not by its terms apply to the Timken Estate because that provision was part of a 1999 regulatory amendment that, under Treas. Reg. § 26.201-1(c), took effect after Louise Blyth Timken's death in 1998. *Estate of Timken v. United States*, 630 F. Supp. 2d 823, 832-33 (N.D. Ohio 2009). The district court held, however, that *Gerson* required the conclusion that the grandfathering exemption is ambiguous and applied the *Chevron* framework to the earlier regulatory provision at issue in this case, the constructive additions provision. *Id.* at 830 n.10, 833. The district court held that the constructive additions provision was also reasonable under *Chevron* because it harmonized with the statute's plain language, and the district court concluded that the facts of the present case fell within the constructive additions provision. *Id.* at 833-34. Therefore, the district court held, the lapse of Louise Blyth Timken's general power of appointment was a post-GST-tax constructive addition to the trust and the transfers at issue fell outside the grandfathering exemption to the GST tax. *Id.*

IV. The GST tax applies to this case

The transfers at issue are subject to the GST tax because the grandfathering exemption is ambiguous as applied to this case, the regulation is a reasonable interpretation of the grandfathering exemption, and this case falls within the regulation. The parties agree that the GST tax applies to the transfers to the settlor's grandnieces and grandnephews unless these transfers fall within the grandfathering exemption to the tax. The parties also agree that the *Chevron* framework applies to the constructive additions regulation.

Under *Chevron*, the court first determines whether "Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43. "In making the threshold determination under *Chevron*, a reviewing court should not confine itself to examining a particular statutory provision in isolation. Rather, the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (internal quotation marks omitted) (internal citation omitted). When the statute at issue is unclear or does not speak to the precise question at issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

A. The grandfathering exemption is ambiguous as applied to this case

First, as the Estate concedes, we are bound by *Gerson* to conclude that the grandfathering exemption is ambiguous. In *Gerson* we held that the grandfathering exemption was ambiguous as applied to the post-GST-tax exercise of a general power of appointment granted in a pre-GST-tax irrevocable trust. 507 F.3d at 440-41. We reasoned that the language in the statute, "generation-skipping transfer under a trust which was irrevocable," was ambiguous as to whether it included exercises of a general power of appointment under an irrevocable trust:

The ambiguity of this term ["under"]—a common word without further definition in the GST scheme—results from the conflict between the Estate's reading that "under" merely implies that the trust instrument is the root of the skip power and the Commissioner's reading that the transfer was not under a trust irrevocable before 1985, but under [the] will [of the holder of the general power of appointment]. We disagree with the Estate that the statute has a plain meaning, as both parties offer plausible, contrary interpretations.

*Id.* at 441.

Our analysis relied on the determination that the statutory language was equally ambiguous with regard to lapses and exercises of general powers of appointment. The taxpaying estate in *Gerson* had relied upon cases from other circuits, *Bachler v. United States*, 281 F.3d 1078 (9th Cir. 2002), and *Simpson v. United States*, 183 F.3d 812 (8th Cir. 1999). Those cases had held the grandfathering clause to be unambiguous with respect to *exercises* of general powers of appointment in part by distinguishing a Second Circuit case, *E. Norman Peterson Marital Trust v. Commissioner*, 78 F.3d 795 (2d Cir. 1996). *Bachler*, 281 F.3d at 1080; *Simpson*, 183 F.3d at 814-16. *Peterson* held that the language in the grandfathering exemption "corpus added to the trust" was ambiguous in the context of *lapses* of general powers of appointment. 78 F.3d at 800. In the following terms, we followed *Peterson* and rejected the proffered distinction between exercises and lapses of general powers of appointment:

We agree with the *Simpson* and *Bachler* courts that the [grandfathering exemption] breeds "under" cases and "added" cases, but we disagree that exercise and lapse come to different ends. In the exercise of a power of appointment, two transfers occur. In the first transfer, the appointment power holder becomes the owner of the trust assets for tax purposes. *See* I.R.C. § 2041(a)(2) (including assets over which a decedent has a power of appointment in the decedent's taxable estate). In the second transfer, the holder transfers the assets to a skip person. If the second transfer occurs after the GST tax became effective, tax liability ensues. By contrast, in the lapse of a power of appointment, three transfers occur. The creation of the power of appointment again amounts to a first transfer, but because the holder of the power of appointment never uses the power, the assets flow back through the trust as a second transfer, reaching the skip person in the third transfer from the trust. *See* [Treas. Reg.] § 26.2601-1(b)(1)(v)(A) ("[T]he value of the entire portion of the

trust subject to the power that was released, exercised, or lapsed is treated as if that portion had been withdrawn and immediately retransferred to the trust at the time of the release, exercise, or lapse."). If the lapse occurs after 1985, liability results because assets were added to the trust corpus after September 25, 1985, per the second clause of the [grandfathering exemption]. Tax Reform Act of 1986 § 1433(b)(2)(A).

*Gerson*, 507 F.3d at 440-41. Therefore, because *Gerson*'s holding—that the grandfathering exemption is ambiguous as applied to the post-GST-tax exercise of a general power of appointment granted in a pre-GST-tax trust—relies on the conclusion that the exercise and lapse of a general power of appointment must come to the same end for GST tax purposes, we are bound to conclude that the grandfathering exemption is ambiguous as applied to a post-GST-tax lapse of a general power of appointment granted in a pre-GST-tax trust.

As noted, the Ninth Circuit in *Bachler* and the Eighth Circuit in *Simpson* have held that the grandfathering exemption unambiguously precludes the GST tax from applying to transfers resulting from the post-GST-tax exercise of a general power of appointment granted in a pre-GST-tax irrevocable trust. *Bachler*, 281 F.3d at 1080; *Simpson*, 183 F.3d at 814. However, as *Gerson* stated, these cases were decided while the Treasury Department was developing regulations, and "we are surely not bound by the Eighth and Ninth Circuits." 507 F.3d at 440 n.2. This panel is, moreover, bound by *Gerson*, which reached a conclusion different from the one reached in *Simpson* and *Bachler*.

B. The constructive additions regulation is reasonable

*Gerson* also held that a different, later-added regulatory provision, the 1999 regulatory amendment, reasonably resolves the statutory ambiguity in the grandfathering exemption. Because the constructive additions provision resolves the statutory ambiguity in the same way as the 1999 regulatory amendment, the conclusion is inescapable that the constructive additions regulation is also reasonable.

Under the 1999 regulatory amendment at issue in *Gerson*, the grandfathering exemption "does not apply to a transfer of property pursuant to the exercise, release, or

lapse of a general power of appointment that is treated as a taxable transfer under chapter 11 or chapter 12." Treas. Reg. § 26.2601-1(b)(1)(i). Under the relevant part of the constructive additions provision applicable in this case,

> where any portion of a trust remains in the trust after the post-September 25, 1985, release, exercise, or lapse of a power of appointment over that portion of the trust, and the release, exercise, or lapse is treated to any extent as a taxable transfer under chapter 11 or chapter 12, the value of the entire portion of the trust subject to the power that was released, exercised, or lapsed is treated as if that portion had been withdrawn and immediately retransferred to the trust at the time of the release, exercise, or lapse.

Treas. Reg. § 26.2601-1(b)(1)(v)(A) (1998). These two regulatory provisions resolve the ambiguity in the same way—under both provisions, the grandfathering exemption does not apply to a generation-skipping transfer that results from the post-GST-tax release, exercise, or lapse of a general power of appointment when that release, exercise, or lapse is subject to estate or gift taxes. In *Gerson*, we determined that the 1999 regulatory amendment was reasonable because, like other tax code provisions, the 1999 regulatory amendment treats a general power of appointment like outright ownership. 507 F.3d at 441. Because the constructive additions provision reaches the same result as the 1999 regulatory amendment, the constructive additions regulation is also reasonable.[1]

The Estate argues that the concept of a constructive addition is impermissible and that the term "added" in the grandfathering exemption is limited to additions from an outside source. However, the Treasury Department rejected this narrow definition of "added" because it found that a broad definition that included constructive additions pursuant to a general power of appointment would effect congressional intent that the grandfathering exemption apply "only in those cases where the generation-skipping

---

[1]Even without *Gerson*, the constructive additions regulation is a reasonable interpretation of the statute because it construes the grandfathering exemption to treat a general power of appointment like outright ownership, as that power is treated in other tax code provisions. Treating the general power of appointment like outright ownership is reasonable because the holder of that power may exercise it to pass the trust corpus to someone other than a person two or more generations below the holder of that power, thereby avoiding the GST tax, or may use all the trust assets to pay personal taxes and debts.

transfer could not be avoided." Generation-Skipping Transfer Tax Regulations; Effective Date Provisions for Generation-Skipping Transfer Tax, 45 Fed. Reg. 53,123, 53,124 (Aug. 11, 1980); *see also Peterson*, 78 F.3d at 800-01. Therefore, including constructive additions as part of the corpus that may be added to the trust is a reasonable construction of the statute.

The Estate's remaining arguments fail. A settlor's potential reliance on the tax-free status of generation-skipping transfers when he created the trust is immaterial because "[t]ax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *United States v. Carlton*, 512 U.S. 26, 33 (1994). In this case, the settlor's potential reliance interests are not at issue because these generation-skipping transfers resulted from trust successors' post-GST-tax qualified disclaimers, not the trust itself. *Ann Jackson Family Foundation v. Commissioner*, 15 F.3d 917, 921-22 (9th Cir. 1994), is inapposite because that case, unlike this one, concerned regulation that was not revised after an amendment significantly narrowed the corresponding statute. Revision of the constructive additions provision after the 1986 amendment to the GST tax was unnecessary because the grandfathering exemption—apart from the GST tax's effective date—remained the same. As the Estate argues, the constructive additions provision probably renders the grandfathering exemption inapplicable every time a pre-GST-tax general power of appointment is exercised post-GST-tax to skip generations. However, that result is neither unfair nor contrary to the purposes of the statute, and in fact that result achieves the GST tax's purpose of taxing generation-skipping transfers in a manner comparable to single-generation transfers. *See Comerica Bank*, 93 F.3d at 228.

C. The constructive additions provision applies to the generation-skipping transfers at issue

The Estate also argues that the constructive additions provision by its technical terms does not in fact apply in this case. The constructive additions provision, however, does apply to the generation-skipping transfers at issue and renders the grandfathering exemption inapplicable, because trust assets remained in the trust after the lapse of Louise Blyth Timken's general power of appointment and that lapse was subject to estate taxes.

A constructive addition occurs when (1) a portion of a trust remains in the trust after the post-September 25, 1985 release, exercise, or lapse of a power of appointment over that portion of the trust, and (2) the release, exercise, or lapse is treated as a taxable transfer in the estate and gift provisions of the tax code. The first requirement is met because trust assets remained in the trust after the payment of Louise Blyth Timken's estate taxes attributable to the inclusion of trust property in her estate. The second requirement is met because, as the parties stipulated, Louise Blyth Timken's estate paid estate taxes "[b]ecause of the general power of appointment over the Trust property." Therefore, the Timken trust assets are "treated as if [they] had been withdrawn and immediately retransferred to the trust at the time of the . . . lapse [of the general power of appointment]," Treas. Reg. § 26.2601-1(b)(1)(v)(A) (1998), and because these transfers occurred after the effective date of the GST tax, the subsequent transfers of trust assets to her grandnieces and grandnephews are subject to the GST tax.

This case resembles Example 1 of the constructive additions provision, and the Estate conceded at oral argument that Example 1 is part of the applicable regulation. Example 1 provides:

> Lapse of a power of appointment. On June 19, 1980, T established an irrevocable trust with a corpus of $500,000. The trust instrument provides that the trustee shall distribute the entire income from the trust annually to T's spouse, S, during S's life. At S's death, the remainder is to be distributed to T and S's grandchild, GC. T also gave S a general power of appointment over one-half of the trust assets. On December 21, 1989, when the value of the trust corpus is $1,500,000, S died without having exercised the general power of appointment. The value of one-half of the trust corpus, $750,000 ($1,500,000 x .5) is included in S's gross estate under section 2041(a) and is subject to tax under Chapter 11. Because the value of one-half of the trust corpus is subject to tax under Chapter 11 with respect to S's estate, S is treated as the transferor of that property for purposes of Chapter 13 [on the GST tax] (see section 2652(a)(1)(A)). For purposes of the generation-skipping transfer tax, the lapse of S's power of appointment is treated as if $750,000 ($1,500,000 x .5) had been distributed to S and then transferred back to the trust. Thus, S is considered to have added $750,000 ($1,500,000 x .5) to the trust at the date of S's death. Because this constructive addition occurred after September 25, 1985, 50 percent of the corpus of the trust became subject to Chapter 13 at S's death.

Treas. Reg. § 26.2601-1(b)(1)(v)(D) (1998). Like the spouse in Example 1, Louise Blyth Timken had a general power of appointment over trust assets, and therefore these assets were included in her gross estate and subject to estate taxes. When Louise Blyth Timken's general power of appointment lapsed, the portion of the trust over which she had a general power of appointment—the entire trust—is treated as if it had been distributed to her, then transferred back to the trust, so that she is considered to have added that portion of the trust assets to the trust after September 25, 1985. Though Example 1 does not explicitly state that the portion of the trust assets over which the spouse had the general power of appointment "remained" in the trust after the lapse of that power, that conclusion is compelled because Example 1 does state that the portion of the trust over which the spouse had a general power of appointment was subject to the GST tax and, under the regulation, the GST tax only applies to trust assets that remain in the trust following a post-September 25, 1985 lapse of a general power of appointment. Therefore, trust assets that subsequently pass to persons two or more generations below the transferor, such as grandnieces and grandnephews, are subject to the GST tax.

The Estate's attempts to distinguish Example 1 fail. For grandfathering purposes, it is immaterial whether the trust was created before or after the 1986 amendment to the GST tax because the only relevant date for the exemption's application is September 25, 1985. It is also immaterial whether the settlor is alive or dead so long as the trust was irrevocable before September 25, 1985. Though the Estate notes that Example 1 does not provide whether the general power of appointment was granted pursuant to a marital deduction trust, this distinction is immaterial because neither the statute nor the regulation distinguishes a general power of appointment granted pursuant to a marital deduction trust from another general power of appointment. Though the recipients of the generation-skipping transfers in Example 1 are grandchildren rather than grandnieces and grandnephews, this distinction is also immaterial because both transfers are to persons who are two or more generations below the transferor.

## V. Conclusion

For the foregoing reasons, the district court's judgment is affirmed.